## *In re* CHETWOOD, Petitioner.

ORIGINAL.

No. 7, Original. Argued January 11, 1897. — Decided February 15, 1897.

A writ of error from this court removes a cause from a Circuit Court to this court, and it is then for this court to determine whether it may entertain jurisdiction of the cause removed, and to dispose of controversies in respect of the form of the writ, the parties, and the citation and service, without interference from any other court.

A receiver of a national bank, appointed by the Comptroller of the Currency in pursuance of law, acts under the control of the officer appointing him, and does not, by application to the proper court touching a sale of personal property of the bank, become an officer of that court, or place the assets of the bank within its control.

When a state court has acquired jurisdiction of an action or suit to recover moneys alleged to be due a national bank, in the hands of a receiver, the receiver's subsequent discharge and the substitution of an agent in his place by the act of the stockholders does not oust it.

Where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court.

Where property is in the possession of a court of competent jurisdiction, that possession cannot be disturbed by process out of another court of concurrent jurisdiction.

Under the circumstances set forth in the statement of the case, and in the opinion of the court, it is clear that the Circuit Court of the United States for the Northern District of California could not restrain the prosecution of his suit in the state courts by the petitioner, and, if Federal questions arose, it could not prevent this court, or a justice thereof, or the presiding judge of the state court, from granting writs of error, by restraining the parties from applying therefor; nor could it properly direct their dismissal, having been granted.

This court may issue writs of certiorari in all proper cases, and will do so when the circumstances imperatively demand that form of interposition, to correct excesses of jurisdiction, and in furtherance of justice.

THIS is a petition for the vacating of or prohibition upon certain orders of the Circuit Court of the United States for the Northern District of California in the suit of *Stateler* v. *The California National Bank of San Francisco et al.*, enjoining (as was held) the bank and John Chetwood, Jr., from

prosecuting a writ of error from this court in the name of the
bank as plaintiff in error; directing Chetwood to dismiss a
second writ of error from this court; and punishing Chet-
wood.and E. G. Knapp, of counsel, as for'a contempt of the
Circuit Court in suing out said writs of error. Leave was
granted to file the petition, and a rule to show cause was
entered thereon, to which return was made.

The facts necessary to be considered appear to be as
follows:

In October, 1886, the California National Bank of San
Francisco was organized under the national banking laws
with a paid up. capital stock of $200,000, and petitioner
became and remains a stockholder therein. In December,
1888, the bank became insolvent, and the Comptroller of
the Currency on January 14, 1889, appointed one S. P. Young
receiver thereof.

July 19, 1890, petitioner began his· suit in equity in the
Superior Court of· the city and county of San Francisco
against the bank, Richard P. Thomas, Robert R. Thompson,
Richard A. Wilson, and S. P. Young as receiver, "and therein
and thereby, on behalf of said bank and himself. as a repre-
sentative stockholder therein, specially set up and claimed the
right to hold said defendants Thomas, Thompson and Wilson,
as officers and trustees and directors of said bank, accountable
to it in equity, under and in pursuance of the statutes and
laws of the United States, for sundry breaches of their trust
as such officers, directors and trustees," etc.

Thomas was the president, and with. Thompson and Wilson
formed the executive committee of the board of directors of
the bank. The complaint set forth the by-laws with respect
to the separate duties and liabilities of the president and said
executive committee, and charged gross negligence against
each of them in discharge thereof, whereby the bank through
the fraudulent acts of its cashier in making excessive and
unsecured loans and advances was rendered insolvent; and
plaintiff prayed a "joint and several money judgment against
them, the said Richard P. Thomas, Robert R. Thompson and
Richard A. Wilson, for the sum of $400,000, with legal inter-

est thereon from the time of such loss, and costs herein, be rendered and entered by this court in this case in favor of said corporation, the California National Bank of San Francisco, and that said corporation, and this plaintiff do have such further order, decree, judgment and relief as may be meet and agreeable to equity."

The complaint further averred, and it was so found on the hearing of the case, that Chetwood had, prior to the commencement of such suit, requested the officers of the bank, the receiver thereof and the Comptroller of the Currency, severally, to bring and prosecute the same against the alleged delinquent officers, which requests were refused.

It appears from an affidavit attached to the return that "the receiver, when so made a defendant, and as such served with process, answered, and followed his refusal to bring the suit by opposition and hostility thereto."

On April 27, 1894, the trial court ordered judgment in favor of the plaintiff for the benefit of the bank against Thomas, Thompson and Wilson, and referred the case to a referee to examine and report in respect of the amount for which judgment should be entered. The referee reported to the court a total loss of $166,919 suffered by the bank by reason of the acts and omissions of the defendants, but not the amount for which each was severally responsible. Thereafterwards Thompson and Wilson paid into court $27,500, whereupon the court made an order dismissing them from the suit, and on November 20, 1894, rendered judgment for the plaintiff for the use and benefit of the bank against Thomas for $139,419, with interest at seven per cent per annum from December 15, 1888, being for the sum of $166,919, reported by the referee, less the $27,500 paid by Thompson and Wilson. Thomas appealed from this judgment to the Supreme Court of California, and that court held that the dismissal of Thompson and Wilson was a retraxit and operated in law as a full satisfaction of the cause of action, and upon that ground reversed the judgment against Thomas and entered a personal judgment against Chetwood for costs, etc. *Chetwood* v. *California National Bank*, 113 California, 414; 45 Pac. Rep.

704. To review that judgment a writ of error was sued out from this court, bearing date September 24, 1896. This writ of error was allowed by Mr. Justice Field, who approved a bond and signed a citation running in the name of the California National Bank of San Francisco as plaintiff in error to Richard P. Thomas as defendant in error, service of which on Thomas, Stateler, S. P. Young and R. A. Wilson was accepted. Chetwood also accepted service, but asked that he be entered as a plaintiff in error, and that for that purpose the writ of error be amended. The case was docketed by the clerk of this court as No. 673, under the title of *California National Bank of San Francisco* v. *Richard P. Thomas.*

The receiver of the bank never authorized or aided in the prosecution of the suit, nor claimed nor attempted to take control or possession thereof, nor of the judgment entered therein, nor of any part of the $27,500 paid into the state court by Thompson and Wilson.

The Comptroller of the Currency in July, 1894, had paid all the creditors of the bank whose claims had been proven or allowed, except shareholders who might have been creditors of the bank, together with all the expenses of the receivership, and the redemption of the bank's notes having been provided for by deposit of lawful money therefor with the United States Treasurer, a meeting of the stockholders of the bank was called pursuant to the act of August 3, 1892, c. 360, 27 Stat. 345, at which Thomas, holding nine hundred and sixty shares of the stock and controlling sixty shares more, threw, as is alleged, one thousand and twenty votes, being a majority, in favor of discontinuing the receiver, and of the selection of T. K. Stateler as agent of the bank to succeed the receiver, Young, in the settlement of its affairs. Stateler was thereupon declared elected, Chetwood protesting, and on February 26, 1895, the Comptroller and the receiver executed an assignment of all assets of said bank then in their hands or subject to their order or control to said Stateler.

On March 19, 1895, and pending the appeal of Thomas in the Supreme Court of the State, Stateler voluntarily appeared in the Superior Court of San Francisco and moved for an

order directing that so much of the $27,500 as then remained in that court be paid over to him, which motion was resisted by petitioner and denied by the Superior Court. From this order Stateler appealed to the Supreme Court of the State, which reversed it and directed that the money be paid over to him. 113 California, 649. Petitioner thereupon sued out a writ of error from this court, which was allowed by the Chief Justice of California, citation duly issued and served, bond approved and, as the money was in custody of the Superior Court and drawing interest, the writ was made a supersedeas. The record was filed in this court and the cause docketed as No. 674. This writ bears date October 17, and appears to have been allowed October 22.

January 4, 1896, while both the appeals of Thomas and Stateler were pending in the Supreme Court of the State and undetermined, Stateler filed an original bill in the Circuit Court of the United States for the District of California against the bank and Chetwood, alleging that as such agent he was an officer of the United States, and that he had sole power to act for the bank and its shareholders, to the exclusion of the stockholders, directors and officers thereof. This bill contained, among other allegations, the following:

"Your orator further avers that heretofore, to wit, on the 21st day of February, 1889, and prior to the commencement of any of the suits hereinbefore mentioned, S. P. Young, the receiver of the defendant banking association, did file in this honorable court a petition entitled 'In re application of receiver of the California National Bank for the sale of personal property,' and which said petition, among other things, recited that said California National Banking Association had been duly adjudged insolvent by the Comptroller of the Currency of the United States; that the petitioner therein had been by said Comptroller duly appointed the receiver of such association, and that said petitioner had duly qualified as such receiver and entered upon the performance of the duties of his office, and that as such receiver there had come into his possession certain personal property of said banking association, and thereupon in and by said petition the said receiver of

said banking association thereupon submitted himself and the affairs of said banking association to the jurisdiction of this honorable court, as provided by the national banking laws of the United States and the amendments thereof, and thereupon asked for and obtained from this honorable court an order authorizing him to sell the property described in said petition, and to apply the proceeds thereof as provided by law, and that the filing of said petition was a necessary step in the winding up of the affairs of said defendant banking association; that thereafter and from time to time the said receiver did obtain from this honorable court orders directing him to sell various pieces of property belonging to said banking association and to compromise various debts due to said banking association and did, as such receiver, institute in this honorable court suits to collect moneys due said banking association, all of which said proceedings and suits were necessary steps in the winding up of the affairs of said defendant banking association, and, as such receiver, did in every way and as provided by the Revised Statutes of the United States and the amendments thereto hold himself amenable to the orders of this honorable court; and your orator avers that the jurisdiction of this honorable court over the affairs of said defendant banking association did attach on the 21st day of February, 1889, as aforesaid, and that the affairs of said defendant banking association have never been wound up, but that your orator is now engaged in winding up the affairs of said defendant banking association, and that it will be necessary for him to bring various suits to collect the outstanding assets of said association, and, among others, a suit against the defendant John Chetwood, Jr., to recover the moneys so as aforesaid due and owing from him to the defendant banking association, and that it is necessary for him to bring this suit and to obtain the relief herein prayed for, so that he can proceed to wind up the affairs of said defendant banking association without further interference from the defendants John Chetwood, Jr., or the alleged board of directors of said insolvent association."

The prayer was for a decree adjudging that complainant "is

the duly elected, qualified and acting agent, of the defendant bank, to wit, the California National Bank of San Francisco, and as such exclusively entitled to have and receive in his custody and under his control all the moneys and property of said bank, and to collect the outstanding indebtedness due to said bank, whether the same be evidenced by open accounts, bills, notes or judgments of record, to the end that the affairs of the bank may be wound up, its property converted into money, and its money distributed among its shareholders, as provided by the national banking laws of the United States; that all the acts of the defendant banking association through its alleged board of directors, as herein set forth, since the appointment of a receiver to take charge of its affairs, as herein set forth, be adjudged null and void, and that its board of directors has no authority to take any action touching the affairs of the association; that the said bank, its board of directors, officers and employés, and the said John Chetwood, Jr., his agent and servants, and each and every of their said attorneys, solicitors and counsellors, be forever restrained and enjoined from denying the rights of your orator to the said office of agent of said banking association, and from denying his right as such to the exclusive control of the assets of said bank, as above set forth, and from commencing any further litigation against him as such agent, and from prosecuting or defending any action heretofore brought by them or either of them against your orator as such agent touching his right to said office and touching his exclusive right as such agent to collect the assets of said bank, except the suit, now pending in this court, brought by them as aforesaid against your orator on the 12th day of November, 1895, and which suit your orator hereby especially exempts from the operation of any injunction that may hereafter be granted herein, and that the said bank, its board of directors, officers and employés, and the said defendant Chetwood, his agents and servants, and each and every of their said attorneys, solicitors and counsellors, be forever restrained and enjoined from commencing any further suits to collect any outstanding debts due the said bank, whether the same

be evidenced by an open account, bill, note or judgment, and particularly from attempting in any manner to collect the judgment heretofore recovered for said bank against the said Richard P. Thomas and hereinbefore referred to, and from further prosecuting the suit brought by them in the Superior Court of Alameda County to place a receiver in charge of the Standard Soap Company, as hereinbefore set forth"; for an order to show cause why an injunction should not issue, and a temporary restraining order; and for general relief.

The Circuit Court, on February 24, 1896, entered the following order:

"It is now ordered, adjudged and decreed that until the further order of this court or of the judge thereof the defendants, The California National Bank of San Francisco, its directors, officers and employés, and said John Chetwood, Jr., his agents, servants, attorneys, solicitors or any other representative, are hereby restrained and enjoined from commencing any further litigation against the complainant, as agent of said bank, and from commencing any further suits to collect any outstanding debts due said bank, whether the same be evidenced by open accounts, bills, notes or judgments, or otherwise, or from in any way whatever taking or attempting to take any control or possession of any of the funds or assets or property of the said bank, and from settling and allowing or attempting to settle or allow any attorneys' charges or any other fees, expenses or costs growing out of or which it may be claimed grew out of any past litigation in this matter, and from in any way disposing of or encumbering any of the assets, money or property of said bank; but the defendants are not hereby enjoined from prosecuting or defending to final determination any actions in this matter now pending in the Supreme Court of the State of California or in this court."

In September, 1896, petitioner gave notice and attempted to move in his action in the Superior Court of San Francisco for an allowance for fees and costs; whereupon Stateler moved in the Circuit Court to punish petitioner and his counsel for so doing; and some days later moved for a further order punishing petitioner and his counsel, as well as one Vanderslice,

claiming to be president of the bank, and Thompson, his counsel, for being concerned in suing out each of the writs of error in cases now numbered 673 and 674 on the docket of this court. Rules to show cause were entered. As to the matter of the motion in the state court for an allowance, it appeared that petitioner had withdrawn his application, and the Circuit Court adjudged the punishment of costs only, as it held the violation of its order had been merely technical.

As to the other rule to show cause, the court on the 19th of November, 1896, entered an order which, after discharging Vanderslice and Thompson, thus continued:

"3d. That at the time of applying for a writ of error to the Supreme Court of the United States, in the name of the defendant bank, to review the action of the Supreme Court of the State of California in reversing the judgment recovered by John Chetwood, Jr., in the Superior Court of the City and County of San Francisco, State of California, against Richard P. Thomas in the action of John Chetwood, Jr., plaintiff, v. The California National Bank of San Francisco et al., defendants, the said E. G. Knapp was ignorant of the fact that an injunction had issued out of this court in this case on the 24th day of February, 1896, enjoining the defendants herein and their attorneys from using the name of the bank in any of the litigation referred to in the amended bill in this action, and that by reason thereof the said E. G. Knapp is not guilty of any contempt of this court in applying for said writ of error, and that said order to show cause, as regards the action of the said E. G. Knapp in applying for said writ of error, is hereby discharged as to the said E. G. Knapp.

"4th. That at the time of applying for a writ of error to the Supreme Court of the United States, in the name of the defendant bank and John Chetwood, Jr., the defendants here, to review the action of the Supreme Court of the State of California upon the appeal taken by the complainant here from an order of the Superior Court of the City and County of San Francisco, State of California, in the action of John Chetwood, Jr., plaintiff, v. The California National Bank of San Francisco et al., defendants, made by said Superior Court on the 8th day

of July, 1895, refusing to turn over to the complainant here, as the agent of the bank, a certain fund of money on deposit in said Superior Court to the credit of said action, and which said fund then belonged and now belongs to said bank and which said fund the complainant here, as the agent of said bank, was then entitled and is now entitled to receive and have in his custody, to the end that it may be distributed among the shareholders of said bank under the advice and direction of this court, as provided by law, and which said writ of error was applied for and obtained for the purpose of raising in that action the question of the validity of the election and qualification of the complainant as the agent of said defendant bank and for the purpose of preventing said fund from coming into the hands of the complainant as agent of said bank, so that it might be used by the said defendant, John Chetwood, Jr., for attorneys' fees and costs incurred by him in the litigation referred to in the amended bill herein and in prosecuting the writ of error referred to in paragraph 3d hereof, the said E. G. Knapp well knew that an injunction had duly issued out of this court in this action on the 24th day of February, 1896, enjoining the defendants herein and their attorneys from any further litigation in and about said fund outside the Supreme Court of the State of California and from using the name of the bank in any further litigation in and about said fund or the matters referred to in the amended bill herein, and well knew that it had been adjudged by this court in this action that this court had the sole and exclusive jurisdiction over the matter of winding up said defendant national bank and had the sole and exclusive jurisdiction over the question as to whether or not said complainant was the duly elected and qualified agent of said bank, and that in applying for said last named writ of error the said E. G. Knapp has been guilty of a contempt of this court.

"5th. That the applications for both of the writs of error, hereinbefore referred to, were made by the said E. G. Knapp, claiming to be counsel for said bank; that the said E. G. Knapp did not then represent and never has at any of the times

herein referred to represented said bank as its attorney, and did not then and never has had authority to make either of said applications in its name; and that both of said applications were made by the said E. G. Knapp at the instance and request and with the full knowledge and approval of the defendant John Chetwood, Jr., and that in making both of said applications the said defendant John Chetwood, Jr., has been guilty of a contempt of this court.

"6th. It is further ordered and adjudged, that the defendant John Chetwood, Jr., and said E. G. Knapp pay the costs of this proceeding; and that in prosecuting the writ of error referred to in paragraph 3d hereof, and which said writ of error was obtained in the name of the defendant bank, they altogether refrain from further using the name of said bank; and they are hereby forbidden to use the name of said bank in any way, manner or form in the further prosecution of said writ of error.

"7th. It is further ordered and adjudged, that the defendants herein and E. G. Knapp, the attorney for said defendants, dismiss in the Supreme Court of the United States the writ of error referred to in paragraph 4th hereof, obtained from the Chief Justice of the State of California, to review the action of the Supreme Court of the State of California, on the appeal of Thomas K. Stateler, complainant herein, from the order made on the 8th day of July, 1895, by the Superior Court of the City and County of San Francisco, State of California, in the action entitled John Chetwood, Jr., plaintiff, v. The California National Bank of San Francisco et al., defendants, and which said writ of error was made returnable before the Supreme Court of the United States on the 15th day of December, 1896, and which said proceeding in said Supreme Court of the United States is entitled 'The California National Bank of San Francisco and John Chetwood, Jr., representative stockholder thereof, Plaintiffs in Error, v. T. K. Stateler (Agent), S. P. Young (Receiver), Robert A. Wilson, Richard R. Thompson, and Richard P. Thomas, Defendants in Error'; that said writ of error be dismissed free of all cost to said complainant, and that the defendants herein have and produce

evidence of the dismissal thereof before this court within twenty (20) days from the date hereof."

It appeared that Chetwood had commenced suit in the Circuit Court directly attacking the validity of Stateler's election; and also that it was claimed that the bank had regularly maintained a board of directors, and that officers had been elected, pending the receivership and the subsequent agency.

The petition alleged that petitioner and Knapp were authorized to appear on behalf of the bank, and that they had been employed by the president and the vice-president of the bank and certain other shareholders to appear on behalf of the bank and prosecute the writs of error, and had given security that they would so prosecute said writs and make their pleas good, and attached to the petition was the affidavit of Vanderslice in the Superior Court of San Francisco, subscribed and sworn to October 24, to the effect that he was the president of the California National Bank of San Francisco, and that "said corporation has, through him and the authority given him by the board of directors, retained and employed E. G. Knapp, an attorney and counsellor at law, as attorney to represent it in this court and in the Supreme Court of this State and of the United States, if necessary."

The record contains very many matters not above set forth, but the foregoing are deemed sufficient so far as the questions determined by the court are concerned.

Section 5234 of the Revised Statutes provides that on refusal of any national bank to pay its circulating notes and its consequent default, "the Comptroller of the Currency may forthwith appoint a receiver and require of him such bond and security as he deems proper. Such receiver, under the direction of the Comptroller, shall take possession of the books, records and assets of every description of such association, collect all debts, dues and claims belonging to it, and upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and on a like order, may sell all the real and personal property of such association, on such terms as the court shall direct; and may,

if necessary to pay the debts of such association, enforce the individual liability of stockholders. Such receiver shall pay over all moneys so made to the Treasurer of the United States, subject to the order of the Comptroller, and also make report to the Comptroller of all his acts and proceedings."

By the act of June 30, 1876, c. 156, 19 Stat. 63, the authority of the Comptroller to appoint a receiver was given, under the circumstances enumerated, and, among them, whenever the Comptroller became satisfied on examination of its affairs that the bank was insolvent.

The substitution of an agent for the receiver is provided for by the act of June 30, 1876, as amended by the act of August 3, 1892, c. 360, 27 Stat. 345. When the Comptroller has paid the debts of the particular bank, not including shareholders who are creditors of such association, and all expenses, and the redemption of the bank's circulating notes shall have been provided for as prescribed, the Comptroller calls a meeting of the shareholders, at which they determine by a majority vote whether the receiver shall be continued to wind up the affairs of the bank, or an agent shall be appointed for that purpose. "In case the said meeting shall by a vote of a majority of the stock in value and number of shares determine that an agent shall be elected, the said meeting shall thereupon proceed to elect an agent, voting by ballot, in person or by proxy, each share of stock entitling the holder to one vote, and the person who shall receive votes representing at least a majority of stock in value and number shall be declared the agent for the purposes hereinafter provided, and whenever any of the shareholders of the association shall, after the election of such agent, have executed and filed a bond to the satisfaction of the Comptroller of the Currency, conditioned for the payment and discharge in full of each and every claim that may thereafter be proved and allowed by and before a competent court, and for the faithful performance of all and singular the duties of such trust, the Comptroller and the receiver shall thereupon transfer and deliver to such agent all the undivided or uncollected or other assets of such association then remaining in the hands or subject to the order and

control of said Comptroller and said receiver, or either of them ; and for this purpose said Comptroller and said receiver are hereby severally empowered and directed to execute any deed, assignment, transfer or other instrument in writing that may be necessary and proper, and upon the execution and delivery of such instrument to the said agent the said Comptroller and the said receiver shall by virtue of this act be discharged from any and all liabilities to such association, and to each and all the creditors and shareholders thereof. Upon receiving such deed, assignment, transfer or other instrument, the person elected such agent shall hold, control and dispose of the assets and property of such association which he may receive under the terms hereof, for the benefit of the shareholders of such association, and he may in his own name, or in the name of such association, sue and be sued, and do all other lawful acts and things necessary to finally settle and distribute the assets and property in his hands, and may sell, compromise or compound the debts due to such association, with the consent and approval of the Circuit or District Court of the United States for the district where the business of such association was carried on, and shall at the conclusion of his trust render to such District or Circuit Court a full account of all his proceedings, receipts and expenditures as such agent, which court shall, upon due notice, settle and adjust such accounts and discharge said agent and the sureties upon said bond."

*Mr. A. B. Browne* for petitioner. *Mr. Robert Rae* and *Mr. A. T. Britton* were on his brief.

*Mr. Robert Brent Mitchell* opposing.

Mr. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

The writs of error removed the original suit in both its branches to this court, and whether or not jurisdiction may be entertained of both or either of them, it is for this court to determine when the question properly arises.

And so if there be controversy in respect of the form of the writs, parties, citation and service, or otherwise, these are matters for the disposition of this court without interference from any other.

We find it impossible to accept any ground suggested for the assumption by the Circuit Court of jurisdiction to compel Chetwood to desist from using the name of the bank on the writ of error in the case against Thomas, and to dismiss absolutely the writ of error in the case involving Stateler's effort to obtain control of the funds.

It is true, as stated in *In re Tyler, Petitioner*, 149 U. S. 164, 181, that "no rule is better settled than that when a court has appointed a receiver, his possession is the possession of the court, for the benefit of the parties to the suit and all concerned, and cannot be disturbed without the leave of the court; and that if any person, without leave, intentionally interferes with such possession, he necessarily commits a contempt of court, and is liable to punishment therefor." But we do not regard these proceedings as falling within that rule.

As neither the bank's officers or directors, nor the receiver, nor the Comptroller, would, on demand, bring suit, Chetwood's suit on behalf of himself and other stockholders of the California National Bank of San Francisco to recover judgment in the bank's favor for the alleged wrongful acts of the managing agents of the corporation, must be assumed, on this record, to have been properly instituted, and it is not contended that this was ever challenged by the receiver or by Stateler claiming as his successor. The receiver was made a party defendant thereto, but took no steps to remove the cause to the Federal court, and, as is averred, assumed an attitude of hostility to the prosecution of the suit, and did nothing to aid in securing judgment against the officers of the bank, whose alleged breach of trust and liability therefor was the sole foundation for the action. Nor is it questioned that the suit was rightly brought in the state court. *Whittemore v. Amoskeag National Bank*, 134 U. S. 527.

The receiver was appointed by the Comptroller of the Currency, January 14, 1889, and Chetwood commenced his suit

July 19, 1890. The receiver was not the officer of any court but the agent and officer of the United States, as ruled by Mr. Justice Gray, on circuit, in *Price* v. *Abbott*, 17 Fed. Rep. 506, and by Mr. Justice Jackson, then Circuit Judge, in *Armstrong* v. *Trautman*, 36 Fed. Rep. 275. And see *Porter* v. *Sabin*, 149 U. S. 473, 479; *Platt* v. *Beach*, 2 Ben. 303; *Frelinghuysen* v. *Baldwin*, 12 Fed. Rep. 395; *Armstrong* v. *Ettlesohn*, 36 Fed. Rep. 209.

It has been so often decided that the authority vested in the Comptroller to appoint a receiver of a defaulting or insolvent national bank, or to call for a ratable assessment upon its stockholders, is not open to objection because vesting that officer with judicial power in violation of the Constitution, that we have recently declined to reëxamine that question. *Bushnell* v. *Leland*, 164 U. S. 684.

The receiver acts under the control of the Comptroller of the Currency and the moneys collected by him are paid over to the Comptroller, who disburses them to the creditors of the insolvent bank. Under section 5234 of the Revised Statutes, when the receiver deems it desirable to sell or compound bad or doubtful debts, or to sell the real and personal property of the bank, it devolves upon him to procure "the order of a court of record of competent jurisdiction," but the funds arising therefrom are disbursed by the Comptroller, as in the instance of other collections.

The Circuit Court did not have the assets or property of this bank in its possession on July 19, 1890, nor was the leave of that court necessary in order that the receiver might be made a party defendant to the action instituted by Chetwood on that day.

In the bill filed by Stateler in the Circuit Court, January 4, 1896, to enjoin Chetwood and the bank, the averment is made that on February 21, 1889, the receiver filed an application in the Circuit Court entitled "*In re* application of receiver of the California National Bank for the sale of personal property," and the bill asserts as a conclusion of law that thereby "the said receiver submitted himself and the affairs of said banking association to the jurisdiction of this honorable court."

The application thus referred to is not made part of the return to the rule, but from the averments of the bill in regard to it, and from the terms of the national banking law itself, we think it plain that no such result followed its presentation. Our attention has been called to no case in which it has been held that the filing of such petitions by national bank receivers in the Federal courts operates to make the receiver an officer of the court or to place the assets of the bank within the control of the court in the sense in which control is acquired where a receiver is appointed by the court.

As we have said, Chetwood's right to bring the suit in the state court against the officers of the bank must be held as not open to dispute on this record, and the bank was properly made a party.

Whether the bank's name was necessarily or rightly used in the prosecution of the writs of error, we are not now called on to decide.

The suit was properly brought in the state court, proceeded to judgment, and was carried to the Supreme Court of California on appeal. These courts undeniably had jurisdiction over the suit and the parties. About four years after the suit was commenced, Stateler was elected agent to succeed the receiver, and the usual assignment by the Comptroller and receiver, to him as such, was executed. The legality of Stateler's election, though controverted, must be conceded for the purposes of this application. But did the substitution of an agent for the receiver oust the jurisdiction of the state court? Certainly not. He was no more an officer of the Circuit Court in the first instance than the receiver was. The agent proceeds in the settlement with like authority to that conferred upon the receiver, although at the conclusion of his duty he is required to render to the Circuit or District Court of the United States, for the district where the business of the bank is carried on "a full account of all his proceedings, receipts and expenditures as such agent, which court shall, upon due notice, settle and adjust such accounts and discharge said agent and the sureties upon said bond"; and thus he and his bondsmen are protected by the final order of the Federal

court upon the performance of the conditions imposed. But there is nothing in the language of the statute from which it can be inferred that it was the intention that the jurisdiction of state courts of competent and concurrent jurisdiction, first obtained, should be interfered with by restraining orders issued by Federal courts on the application of such an agent. The agent may indeed intervene in a case in the state court and receive the fruits of the litigation to be administered subject to the final approval of the Federal court, and, accordingly, Stateler as agent submitted himself to the jurisdiction of the state courts and applied for an order turning over to him the fund so far as realized. Nevertheless the agent must abide the result and cannot control it through the interposition of another independent and concurrent jurisdiction.

The doctrine is firmly established that where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court, and that where property is actually in the possession of one court of competent jurisdiction such possession cannot be disturbed by process out of another court of concurrent jurisdiction. *Moran v. Sturges*, 154 U. S. 256, and cases cited. And by section 720 of the Revised Statutes the granting of injunctions to stay proceedings in any court of a State is prohibited in express terms. It is unnecessary here to point out such exceptions or limitations as may exist.

Obviously the Circuit Court could not restrain the prosecution of this suit in the state courts, and we are equally clear that if Federal questions arose, the Circuit Court could not prevent this court, or a justice thereof, or the presiding judge of the state court, from granting writs of error, by restraining the parties from applying therefor; nor could it properly direct their dismissal, having been granted. Cases transferred to this court must be dealt with by this court. Of course it is quite possible that the litigation had gone far enough after the state Supreme Court had passed upon it, but parties cannot be deprived of the right to prolong it, if the right exists, in this manner and under such circumstances.

Considered apart from the construction placed upon it by the Circuit Court, we should say that the injunction order of February 24, 1896, was not intended to restrain either Chetwood or the bank, or both, from prosecuting the writs of error from this court. The concluding words of the order are " but the defendants are not hereby enjoined from prosecuting or defending to final determination any actions in this matter now pending in the Supreme Court of the State of California or in this court." According to the practice in this court a writ of error has been treated rather as a continuation of the original litigation than the commencement of a new action, *Nations* v. *Johnson*, 24 How. 195, 205 ; *Cohens* v. *Virginia*, 6 Wheat. 410; but in any view we should not have thought that writs of error were included within the scope of the order, or that the Circuit Court designed to interfere in such a way with the prosecution of the principal controversy as to arbitrarily stop the case on the judgment of the Supreme Court of the State if it proved adverse to the bank and its interested stockholders, and leave them, if such order were lawful, wholly without further remedy, if such they had ; or to preclude one of the parties from attempting to obtain a review of the judgment in the matter of the rights of Stateler, however that might be determined in the Supreme Court of the State, whose decisions on both appeals were rendered after the entry of the restraining order.

The Circuit Court, however, has otherwise construed the order, and has adjudged petitioner and his counsel guilty of contempt in its violation as thus construed. And it has directed petitioner to dismiss one of the writs of error and to desist from using the name of the bank in the other, in advance of what we may determine as to either of these matters when coming on to be disposed of.

As in our opinion the Circuit Court exceeded its jurisdiction in thus proceeding, we are constrained to make the rule absolute.

By section 14 of the Judiciary Act of September 24, 1789 (1 Stat. 81, c. 20), carried forward as section 716 of the Revised Statutes, this court and the Circuit and District Courts

of the United States were empowered by Congress " to issue all writs, not specifically provided for by statute, which may be agreeable to the usages and principles of law"; and, under this provision, we can undoubtedly issue writs of certiorari in all proper cases. *Amer. Construction Co.* v. *Jacksonville Railway*, 148 U. S. 372, 380. And although, as observed in that case, this writ has not been issued as freely by this court as by the Court of Queen's Bench in England, and, prior to the act of March 3, 1891, c. 517, 26 Stat. 826, had been ordinarily used as an auxiliary process merely, yet, whenever the circumstances imperatively demand that form of interposition the writ may be allowed, as at common law, to correct excesses of jurisdiction and in furtherance of justice. Tidd's Prac. * 398; Bac. Ab., Certiorari.

Judgments in proceedings in contempt are not reviewable here on appeal or error, *Hayes* v. *Fischer*, 102 U. S. 121; *In re Debs*, 158 U. S. 564, 573; 159 U. S. 251; but they may be reached by certiorari in the absence of any other adequate remedy.

The writ of certiorari will be allowed to bring up the record so that the order adjudging Chetwood and his counsel in contempt for being concerned in suing out the writs of error, and directing them, or either of them, to refrain from prosecuting the one writ in the name of the bank and to dismiss the other, may be revised and annulled. We presume, after what we have said, it will not be necessary for the writ to issue.

*Rule absolute; Certiorari allowed.*