TRAVIS COUNTY v. KING IRON BRIDGE & MANUFACTURING CO.[1]

(Circuit Court of Appeals, Fifth Circuit. March 14, 1899.)

No. 795.

1. CIRCUIT COURTS OF APPEALS—JURISDICTION TO ISSUE CERTIORARI AS ORIGI-
NAL PROCESS.

Act Cong. March 3, 1891, § 2, declares that the jurisdiction of the
circuit courts of appeals is "appellate," as "limited and established" by the
act. Section 11 provides that no appeal or writ of error by which any
judgment or decree may be reviewed in said courts shall be taken or sued
out, except within six months after the entry of the judgment or decree.
Section 12 provides that said courts shall have the powers specified in
Rev. St. U. S. § 716, which authorizes the federal courts "to issue all
writs not specifically provided for by statute which may be necessary for
the exercise of their respective jurisdictions, and agreeable to the usages
and principles of law." Held, that the circuit courts of appeals cannot
issue writs of certiorari as original process. They can review no cause
except by an appeal taken or a writ of error sued out as prescribed.

2. JUDGMENTS—FINALITY—EFFECT OF CHANGE IN INTERPRETATION OF LAW.

A change in the interpretation of a law applicable to a cause prosecuted
to judgment does not entitle the party who was cast in the suit by reason
of the prior interpretation to reopen the controversy.

This is an application by the county of Travis, Tex., for a writ of
certiorari to bring up for review from the United States circuit court
for the Western district of Texas the cause of Travis county against
the King Iron Bridge & Manufacturing Company, in which suit, on
July 13, 1893, a final judgment was rendered by that court against
the county of Travis, plaintiff in the cause. The present petition for

[1] Rehearing denied March 28, 1899.

certiorari was, on January 9, 1899, presented to this court by counsel, who moved the court for leave to file it. The motion was taken under advisement, and on the following day, January 10, 1899, leave having been granted, the petition was filed.

The petition for certiorari alleges that the county of Travis brought suit in the United States circuit court for the Western district of Texas against the King Iron Bridge & Manufacturing Company upon a certain indemnity bond for $47,000, executed and delivered by the bridge company to the county of Travis. The bond recited that on July 3, 1888, the bridge company entered into a contract with the representatives of the county of Travis to build a certain bridge across the Colorado river at Montopolis Ford, in the county of Travis, for the sum of $47,000, payable in 6 per cent. bonds of the county; $25,000 in said bonds having been issued to the bridge company, leaving a balance of $22,000 unpaid. The indemnity bond further recited that a question had arisen as to the correct high-water mark of the year 1869 (the contract requiring the floor or bed of the bridge to be five feet above the highest flood level of that year). The indemnity bond recited that, provided the county's representatives should issue and deliver to the bridge company the remaining bonds, amounting to $22,000, with certain interest, the bridge company guarantied the bridge "for the term of ten years against the flood level of A. D. 1869, and, if the bridge continue to stand against said flood level of 1869 for a term of ten years," the bond to be void; otherwise to remain in full force. The petition for certiorari proceeds to allege that in accordance with the indemnity bond the county executed and delivered to the bridge company the remaining 22 county bonds, amounting to $22,000, mentioned in the indemnity bond, and that within about one month thereafter two spans of the bridge washed away, and several piers were damaged, in a flood in the Colorado river that did not rise as high, by several feet, as the flood level of 1869.—the terms of the indemnity bond being thus broken, and the bridge company made liable to the county; that the bridge company refused to either pay anything or to repair the bridge, and the county was compelled to repair the bridge at a cost of $23,910.50. The county brought suit for the amount of the indemnity bond, and, in the alternative, for the actual outlay in repairing the bridge. The bridge company set up as a defense, among other matters, that the indemnity bond sued upon was without good and valuable consideration in law, and was, therefore, of no binding force against it. By stipulation, the cause was tried by the judge sitting in the United States circuit court without a jury. The judge's conclusions of fact show: That the contract for the building of the bridge was entered into on July 3, 1888, the price being $47,000, to be paid in county bonds. That on May 13, 1889, the bridge company tendered the bridge as being completed, and demanded payment in county bonds of the remaining $22,000 due on the bridge, 25 bonds of $1,000 each having theretofore been delivered. That the representatives of the county refused to accept the bridge, upon the ground that it was not as high as required by the contract. That a controversy thus arose, which was finally adjusted on July 3, 1889. The controversy as to the height of the bridge was compromised by the execution on July 12, 1889, of the indemnity bond sued on. That shortly afterwards the county delivered 22 of its bonds of $1,000 each to the bridge company. That the bridge company sold the bonds, but the amount realized from them was not shown. That neither before the issuance of these bonds, nor at any reasonable time afterwards, did the county levy any tax, or make any provision whatever, for the payment of the interest on the bonds, or to provide a sinking fund for the payment of the principal. As conclusions of law the judge found that the 22 county bonds mentioned in the contract of guaranty of July 12, 1889, are null and void, as having been issued contrary to the constitution and laws of the state of Texas, and that, therefore, they are not binding on the county; that there was no consideration for the guaranty entered into by the bridge company, and such contract is void, and not binding on the parties. The petition for certiorari proceeds to show that on March 19, 1896, one Albert Wade brought suit in the United States circuit court for the Western district of Texas against the county of Travis on interest coupons attached to the bonds issued by the county in accordance with the indemnity

bond of July 12, 1889, above mentioned. The suit was decided against Wade (72 Fed. 985), the judgment being, on writ of error, affirmed by this court (26 C. C. A. 589, 81 Fed. 742) on June 16, 1897. The petition for certiorari avers that the county of Travis was defeated in its suit against the bridge company, and was successful in defending the suit brought by Wade because of the construction then placed on the constitution of Texas by the highest court of that state, which construction was followed by the federal courts. The petition alleges that subsequently, on January 10, 1898, the supreme court of Texas, in the case of Mitchell Co. v. City Nat. Bank of Paducah, 43 S. W. 880, rendered a decision, the effect of which, as contended, is to declare county bonds, such as the bonds issued to the bridge company by the county of Travis, to be lawful and binding; that after the decision of the supreme court of Texas, Wade, who, as already stated, had been defeated in his suit on the interest coupons, applied to the supreme court of the United States for a certiorari to this court, upon the ground that since this court affirmed the judgment against him the supreme court of Texas had rendered the decision just mentioned; that Wade's application to the supreme court of the United States for certiorari was granted in March, 1898, and his suit is now pending in that court. The petitioner, the county of Travis, evidently in anticipation of a charge of laches on its part in not suing out a writ of error from this court in its suit against the bridge company, and in allowing a great lapse of time before applying for certiorari, alleges that the United States circuit court "followed, and was bound in comity and the custom and practice of federal courts to follow, the jurisprudence of the supreme court of the state of Texas on the question at issue; and that petitioner, recognizing that the decisions of the Texas supreme court were, in effect, as held by the circuit court in this case, and further recognizing that the circuit court of appeals and the supreme court of the United States would likewise consider themselves bound to follow those decisions of the state supreme court, construing a provision of the state constitution, submitted to the decision of the circuit court, without seeking to have the same reviewed by the federal appellate courts. That petitioner could not have obtained relief in this court is conclusively shown by every decision on the same question since the judgment of the circuit court in this case, not only by the said circuit court and the Texas supreme court, * * * but also by this court"; citing numerous cases. The petitioner alleges that it would be a great hardship, brought about by no laches or negligence on its part, if Wade should succeed in his suit against it, and yet that it should have no relief against the bridge company. The petitioner further states: "That, if the decision of the said circuit court in this case be allowed to stand, the result will be that, through a change in the decisions of the highest state court, the federal court sustains a defense alleging the invalidity of the said county bonds when urged by one litigant (the bridge company), and overrules the same defense as to the invalidity of the identical bonds when relied upon by another litigant (your petitioner)." The King Iron Bridge & Manufacturing Company has moved to dismiss the application for certiorari, and has also demurred and excepted to the same, for the following reasons: Because it appears from the face of the application that the judgment of the lower court undertaken to be reviewed on certiorari was rendered in July, 1893, and this application for certiorari was not filed in this court until January 10, 1899, and therefore is too late, even if, under any circumstances, the same could at any time have been entertained by this court. Because, if any errors existed in the judgment complained of, such errors could have been revised by this court on writ of error, and the failure of the applicant to avail itself of such remedy is a conclusive bar to any revision of the supposed errors by certiorari. Because under the act of congress creating this court, and fixing its jurisdiction, it has no power to review by certiorari the proceedings of the United States circuit courts. Because, in the suit in which the judgment complained of was rendered, the applicant has filed, on January 9, 1899, and there is now pending in the lower court, an application to file a proposed bill of review, in which the judgment is sought to be reviewed and set aside, and therefore the lower court still has the case before it, and this court has no jurisdiction over it. Because, to grant the application for certiorari would be virtually to abrogate the statute fixing the time within which a judgment

shall be brought to this court for revision by writ of error or appeal, and this court is without power to review a judgment of a United States circuit court except upon a writ of error or appeal duly taken within the time prescribed by law. Because, even if this court had the power to grant the application, no good reason is given why the same was not made more promptly. Because it is not shown that the lower court committed any error in rendering the judgment under the law as it then stood. And because there are no such questions of gravity or importance involved in this cause as would authorize the granting of a certiorari, even if this court had the power to grant it.

C. H. Miller, for petitioner.

M. W. Garnett, for respondent.

Before PARDEE and McCORMICK, Circuit Judges, and PARLANGE, District Judge.

PARLANGE, District Judge, after stating the facts, delivered the opinion of the court.

The only authority which this court has to issue writs of certiorari is conferred by section 12 of the act of congress of March 3, 1891, which established the circuit courts of appeals. This section provides that the circuit courts of appeals "shall have the powers specified in section 716 of the Revised Statutes of the United States"; that is to say, that the circuit courts of appeals shall "have power to issue all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions and agreeable to the usages and principles of law." 26 Stat. 826. The counsel for the county of Travis, petitioner for a writ of certiorari, admit and show in their brief that prior to Ex parte Chetwood, 165 U. S. 443, 17 Sup. Ct. 385, the supreme court issued the writ only as auxiliary process. The counsel quote from American Const. Co. v. Jacksonville, T. & K. W. Ry. Co., 148 U. S. 372, 13 Sup. Ct. 758, wherein the supreme court, speaking of the writ of certiorari, said: "It was used by this court as an auxiliary process only to supply imperfections in the record of a case already before it, and not, like a writ of error, to review the judgment of an inferior court." But the petitioner's counsel contend that Ex parte Chetwood, supra, has virtually operated a complete reversal of the previous jurisprudence on the question of the issuance of the writ of certiorari, and that the language of the supreme court in that case, while not used specifically in construing the power of this court in the matter of the issuing of writs of certiorari, is such as to warrant this court to issue the writ as an original process for the purpose of reviewing the judgment rendered by the circuit court in July, 1893. The counsel's contention has no force or merit. Authority to issue the writ of certiorari as original process in all cases is distinctly conferred on the supreme court by section 6 of the act of March 3, 1891. No such power has ever been conferred on this court, and we are clear that our authority in issuing the writ of certiorari is wholly confined to Rev. St. U. S. § 716, which allows the writ only as auxiliary process. The decision in Ex parte Chetwood, supra, was rendered after the enactment of the act of March 3, 1891. That act conferred in clear terms the fullest authority upon the supreme court to issue the writ of certiorari as an original process, and it is evident that there was no occa-

sion for the supreme court to overrule—as the counsel for the petitioner contend that it did—the jurisprudence which, prior to the act of March 3, 1891, allowed the writ only as auxiliary process. In our opinion, it is clear that nothing was said in Ex parte Chetwood, supra, which indicates that the supreme court intended to disturb its previous construction of its powers under Rev. St. U. S. § 716, and very certainly the supreme court did not even intimate—and had no occasion to do so—that this court could issue the writ as original process. Besides the fact that Rev. St. U. S. § 716, is the only statute authorizing this court to issue writs of certiorari, it should be noted that section 2 of the act of March 3, 1891, declares that the jurisdiction of this court is appellate, as "limited and established" by that act; and that section 11 of the act provides that "no appeal or writ of error by which any order, judgment, or decree may be reviewed in the circuit courts of appeals * * * shall be taken or sued out except within six months after the entry of the order, judgment, or decree." Other provisions of the act specify the causes which may be reviewed in this court. The inference is irresistible that this court can review no cause except by appeal or writ of error taken or sued out within six months.

It is true that courts have issued writs of certiorari as original process without a statute expressly conferring the authority to do so. But those courts were invested with general supervision of the inferior courts to which they issued the writs. Thus we find that the courts of king's bench and of common pleas could issue the writ because they had "superintendence of all inferior jurisdictions." Tidd, Prac. marg. p. 398. Thus again, state courts of last resort, exercising a general superintendence of all inferior courts, have issued the writ as original process. But the circuit courts of appeal have not been vested with a general control or supervision over the courts below them.

We wish to remark that, even if we had the power to issue the writ of certiorari as an original process to review a cause tried in a circuit court, we would not issue the writ in this cause if the issuance of the writ was left to our discretion.

The complaint in this matter is not that the trial court committed an error. On the contrary, the petitioner, in anticipation of a charge of laches on its part in not taking a writ of error to the lower court, admits and asserts that the decision of the trial court was, at the time it was rendered, consonant with the jurisprudence then existing. The gist of the complaint is, therefore, not that the trial court erred in rendering judgment on July 13, 1893, but that on January 10, 1898,—nearly 4½ years after the judgment complained of,—the supreme court of the state of Texas reversed its prior jurisprudence. Even after this decision of the supreme court of Texas, the petitioner allowed almost a year to elapse before applying to this court for certiorari. We can well understand that the petitioner regrets that it cannot enjoy the benefits of the later decision of the supreme court of Texas. This alleged reversal of the former state jurisprudence may appear to work a hardship on the petitioner. But the speedy ending of litigation has always been considered to be a mat-

ter of great public importance. It concerns not only suitors, but those who may derive rights from them. "Interest reipublicæ ut sit finis litium." Practically, a suit would never be finally terminated, if, as contended by the petitioner, it were true that a change in the interpretation of the law applicable to a cause prosecuted to judgment entitled the party who had been cast in the suit by reason of the prior interpretation to reopen the controversy. In the present matter the alleged change of interpretation took place nearly 4½ years after the final judgment, and the petition for certiorari was presented to this court nearly 5½ years after that judgment. This is a great lapse of time. But, if the petitioner's contention were correct in principle, it would seem to be immaterial whether the lapse of time were of long or short duration, and that such a petition as the one now before us could be urged successfully at any time. If, afterwards, the court should return to the overruled doctrine, the controversy would again have to be readjusted, and so on, indefinitely, as long and as often as the jurisprudence should vary. It is evident that it is far better, in the general interest, that there should be a few cases of apparent hardship, such as the one presented, resulting from a change of jurisprudence, than that litigation should never end. The application for certiorari is refused.