## McCONVILLE v. GILMOUR et al.

*(Circuit Court, S. D. Ohio. August 17, 1888.)*

1. COURTS—FEDERAL COURTS—JURISDICTION—NATIONAL BANKS—INSOLVENCY —AGENTS.

The federal courts have the same jurisdiction of suits by and against the "agents" of national banks appointed under the national banking acts of congress, when the "receivers" of an insolvent bank have been displaced by such "agents," as they have of suits by and against the "receivers" of such banks, each being in the same sense officers of the United States, and each representing in precisely the same relation the bank in its corporate capacity; and this jurisdiction attaches without regard to any diversity of citizenship of the parties or the amounts involved.

2. PARTIES—SUBSTITUTION.

When the receiver of an insolvent national bank has been displaced by an "agent" appointed under the acts of congress in that behalf, it is proper practice to substitute, upon motion, the "agent" as the plaintiff on the record in place of the "receiver," in a suit already commenced by the latter.

At Law. Motion by James McConville, who commenced this suit as the "receiver" of the Metropolitan National Bank of Cincinnati, to substitute himself as the "agent" of the said bank, appointed under the provisions of the third section of the act of June 30, 1876, c. 156, as the party plaintiff entitled to continue the suit in the latter capacity against the defendants.

*William B. Burnet* and *J. E. Bruce,* for plaintiff.

*Champion & Williams* and *Logan & Slattery,* for defendants.

HAMMOND, J. It having been established, especially by the judgment of this court in the case of *Armstrong* v. *Trautman, ante,* 275, that we have jurisdiction of cases brought by the receiver of a national bank, without regard to diversity of citizenship or the amount involved, I do not see why we have not the same jurisdiction of suits brought by the "agent," appointed under the provisions of the national banking act to take the place of the receiver under certain circumstances named in the act. Act June 30, 1876, c. 156, (1 Supp. Rev. St. 216; 19 St. 63;) *Armstrong* v. *Trautman, supra; Armstrong* v. *Ettlesohn, ante,* 209; *Price* v. *Abbott,* 17 Fed. Rep. 506; *Frelinghuysen* v. *Baldwin,* 12 Fed. Rep. 395.

This "agent" is an officer of the United States in every sense that the "receiver." is, albeit he is somewhat differently appointed, and his duties are precisely the same, and although he takes up the business at a somewhat later stage of the winding-up proceedings; and, so far as I can see, every argument used in the reasoning of these cases to support the jurisdiction applies with equal force to the "agent" as to the "receiver:" Indeed, the "agent" is only the "receiver" under another name. By the very terms of the act itself, defining the powers of the "agent," he may apply to this court for authority to sell, compromise, or compound the debts, and may sue and be sued in his own name or that of the association, and the general scope of his duties and powers as there defined are those of the receiver and of all receivers winding up an insolvent corporation. The argument against the jurisdiction proceeds on the notion that after the depositors and creditors are paid, the United States has no further interest in the matter, and that the whole administration, being turned over to the shareholders through this "agent," the concern relapses into the condition existing before insolvency, and that the jurisdiction of the federal courts is thereby ousted. But this would be an unnecessary and possibly disastrous separation and division of the jurisdiction over an insolvency proceeding, that should not be permitted upon any mere implication or inference, and only submitted to upon an express command of the statute. It would be a reversal of the general rule, which concentrates the jurisdiction over insolvency proceedings rather than disperses it. Moreover, the United States has no more interest in the matter before than after the appointment of this "agent." The legislation contemplates a more independent and exclusive control by the United States of the assets before than after this "agent" is appointed, in the interest of creditors and depositors, no doubt, and for obvious reasons. It also contemplates a somewhat exclusive control by the shareholders of the remnants of the insolvent assets, also for obvious reasons. Nevertheless, the interest of the United States in the matter is precisely the same, and, in both situations of the assets, is based solely on grounds of public policy equally applicable to either. Having established this national banking system upon the faith of federal supervision and control in certain cases, among which are these useful and necessary provisions for winding up a concern, in the event of insolvency, it induces depositors to place their money in them, creditors to deal with and trust them, the people at large to accept their circulating notes as money, and shareholders to invest in the shares of stock. Now, the latter are as much entitled to the protection arising out of the public policy manifested by the acts of congress for the federal scrutiny and control in their dealings *inter sese*, in case of insolvency, as creditors are entitled to that protection, and for the same reason precisely. The method of dealing with the assets in the one case or the other may be wisely different, but this cannot affect the question of jurisdiction and the reason for it. The conclusion of the argument is in itself a *non sequitur*, and it does not follow because the act of congress grants the shareholders the privilege of controlling the further proceedings in insolvency after the debts are paid, that the fed-

eral jurisdiction does or should cease, but on the contrary the reason for continuing it is the same.

The jurisdiction being thus established for the "agent," who is the successor of the "receiver," there can be no doubt about the right to substitute him as a new party to a suit commenced by the "receiver," during his existence as such. It is the common right and practice of substituting as a new party to the record any successor in interest and representation whenever a change occurs by death or otherwise. Each of these administrative officials—the "receiver" and the "agent"—represent the bank in its corporate capacity, and neither of them is more or less than the other such a representative. The "agent" is in no sense a purchaser from the "receiver," and occupies no relation analogous to that of one who takes from another by purchase, but is only a successor in interest and office to the same right or title as that held by the "receiver," and so falls within the general rule of substitution of one such representative for another whenever there shall be a change. Indeed, here there is scarcely any necessity for a substitution, except for the bare purpose of technical conformity, since the "receiver" and the "agent" are one and the same person, and either may, under the privileges of the statute, sue in his own name as "receiver" or "agent."

Motion granted.