SPECKART et- al. v. GERMAN NAT. BANK et al.

(Circuit Court, D. Kentucky.    February 8, 1898.)

No. 6,638.

1. REMOVAL OF CAUSES—TIME OF REMOVAL.
    The provision of section 3 of the judiciary act of 1875, as amended (25 Stat. 433), that a petition for removal of a cause may be filed at or before the time required for answering or pleading, is modal and formal, and does not operate to prevent a removal, where the cause does not become a removable one until after that time has expired.

2. SAME—FEDERAL QUESTION—RECEIVER OF NATIONAL BANK.
    The rule that, in order to warrant the removal of a cause to the circuit court on the ground that it arises under the laws of the United States, that fact must be shown in the plaintiff's pleading, does not operate to prevent a removal, where the original pleading alleges that defendant is a national banking association, and where a receiver thereof, appointed by the comptroller of the currency, is subsequently made a defendant and petitions for removal.

3. RECEIVER OF NATIONAL BANK—OFFICER OF UNITED STATES.
    A receiver of an insolvent national bank is an officer of the United States.

4. PARTIES—RECEIVER OF NATIONAL BANK.
    In a suit in a state court against an insolvent national bank and others, charging a conspiracy to defraud, and seeking the recovery from the bank of moneys alleged to have been thus obtained, a subsequently appointed receiver of the bank is a proper party defendant.

5. SAME.
    It seems that in such a suit, in a state court, the receiver of the national bank is not a necessary party.

6. REMOVAL OF CAUSES—WINDING UP NATIONAL BANK.
    Such an action falls within the description of "cases for winding up the affairs" of a national bank, under section 4 of the judiciary act of 1875, as amended in 1887 and 1888 (25 Stat. 433), which preserves in such cases the jurisdiction of the federal courts, and the receiver of the bank, intervening as such, is entitled to have the cause removed.

7. NATIONAL BANKS—JURISDICTION OF STATE COURT.
    It seems that a state court is a "court of competent jurisdiction" to adjudicate upon disputed claims against insolvent national banks.

8. REMOVAL OF CAUSES—ACTION AGAINST NATIONAL BANK—GROUND.
    The rule requiring that, where the ground for removing a cause to the federal court is diverse citizenship, that ground must exist, not only at the time of removal, but also when the suit was commenced, has no application, where a receiver of an insolvent national bank intervenes as such, and seeks the removal of a case which is under the head of "winding up the affairs" of the bank.

On motion to remand to the state court.

Dodd & Dodd, Byron Bacon, and D. W. Sanders, for plaintiffs.
John G. Carlisle, Humphrey & Davie, J. T. O'Neal, and W. M. Smith, for defendants.

BARR, District Judge.    In this case, A. J. Speckart, Jacob Frankel, and others, as stockholders of the Louisville Deposit Bank, sued the German National Bank, Adolph Reutlinger, and Albert Reutlinger, who were president and cashier of the German National Bank, and Moses Schwartz, charging a combination and conspiracy to organize the Louisville Deposit Bank, and after its organization to defraud it by getting a large sum of money from said Deposit

Bank in payment of Moses Schwartz' indebtedness to the German National Bank, Moses Schwartz being the president of the Louisville Deposit Bank, and said German National Bank unloading worthless assets of the German National Bank upon said Louisville Deposit Bank. This suit was brought in April, 1894, and the Germania Safety-Vault & Trust Company, as assignee of the Louisville Deposit Bank, and the Louisville Deposit Bank, were made parties defendant with the alleged conspirators; the allegation being that the trust company, as assignee of the Louisville Deposit Bank, had refused, upon demand, to bring the suit to make the German National Bank and the Reutlingers and Schwartz responsible for the money out of which the Deposit Bank was alleged to have been defrauded. Process was issued on this suit, and separate answers were filed by the Reutlingers and the German National Bank. Subsequently, in December, 1896, the Germania Safety-Vault & Trust Company, assignee of the Louisville Deposit Bank, and the Louisville Deposit Bank, and several creditors of said bank uniting therein, filed what is called a counterclaim and cross petition against the German National Bank, in which they admit the allegations of the original bill, and seek to recover from the German National Bank the several sums of money which are alleged in the original bill to have been obtained by the German National Bank by conspiracy and fraud. The prayer of this cross petition is for judgment against the German National Bank primarily for the use and benefit of the creditors of the Louisville Deposit Bank for the sums claimed therein, to wit, the sum of $265,-000, and the further sum of $75,212.65, with interest, and for all proper relief. There was no process issued upon this cross petition, and hence the German National Bank was not before the court on the cross petition until the day of the removal. In January, 1897, R. H. Courtney was appointed, by the comptroller of the currency, receiver of the German National Bank, and he, as such receiver, immediately took possession of all of the property and assets of said bank. On the 28th of June, 1897, the following order was made:

"This day came R. H. Courtney, receiver, and filed herein his petition to be made a party defendant herein; and the plaintiffs and cross plaintiffs object thereto; and, the court being advised, it is now considered that said petition be sustained. And said R. H. Courtney, receiver of the German National Bank, is now made a party defendant herein to the original and to the cross petition, to which the plaintiffs and cross plaintiffs except. This day came R. H. Courtney, receiver of the German National Bank, and presented herein his petition for the removal of this cause to the circuit court of the United States for this circuit and district, and also his bond conditioned according to law; and it is now ordered that said petition and bond be filed, and said bond accepted, and that the court will proceed no further herein."

This order was made upon the following petition:

"R. H. Courtney, receiver of the German National Bank, would respectfully represent unto the court that since the filing of this suit, and since the filing of the last pleading herein, the German National Bank has become insolvent; and that under due and regular proceedings had in conformity with the laws of the United States, and especially in conformity with that statute commonly known as the 'National Bank Act,' the comptroller of the currency has assumed charge of all the assets of the said German National Bank, and has appointed your petitioner, the said R. H. Courtney, as receiver of the said German National Bank, and of all its assets, and that he is now such receiver thereof, duly appointed

and qualified; and that your petitioner, the said R. H. Courtney, receiver, desires to contest the claim of the plaintiffs herein, and does now assert that the said claim is not a just one against the said German National Bank, and that no judgment should be rendered against it thereon. Wherefore the said petitioner, R. H. Courtney, now asks the court to require the plaintiffs to make him a party defendant herein, and, upon being made such party defendant asks to be allowed to conduct the defense herein, the said German National Bank now being in his hands as aforesaid, and its directors having no power or authority over its assets, and being therefore without means to conduct the defense herein; and your petitioner will ever pray."

And the petition for removal is as follows:

"Your petitioner, R. H. Courtney, receiver of the German National Bank, would respectfully represent unto the court that he has been appointed by the comptroller of the currency and now is receiver of the defendant the German National Bank, and the said appointment was made by the said comptroller under the laws of the United States, and especially under that law commonly called the 'National Bank Act'; that the suit herein is one arising under the constitution and laws of the United States; that it involves largely more than $5,000. Your petitioner now presents herein this petition, and also a bond duly executed according to law, and asks that this petition be filed, said bond accepted, and that the court will proceed no further herein; and your petitioner will ever pray."

The transcript having been filed in this court, the plaintiffs, by their counsel, have moved to remand the case to the court from which it came, upon, as we understand, three grounds: First, that the petition and motion for removal to this court came too late; second, that, if it be a fact that it is a case arising under the laws of the United States, that fact is not shown in the plaintiffs' pleading, which is necessary under the rule as announced in the case of Tennessee v. Union & Planters' Bank, 152 U. S. 454, 14 Sup. Ct. 654, and other subsequent cases; and, third, that the defendant is not entitled to removal, under the laws and statutes of the United States.

These questions will be considered in their order.

If Courtney, as receiver, is entitled to a removal, the fact that the petition for removal was not filed on or before the time at which, by the practice and law of the state of Kentucky, the German National Bank was bound to answer, should not prevent a removal now. It is said by the supreme court, Justice Gray delivering the opinion, in the recent case of Powers v. Railway Co., 18 Sup. Ct. 266:

"The existence of diverse citizenship, or other equivalent condition of jurisdiction, is fundamental. The want of it will be taken notice of by the court of its own motion, and cannot be waived by either party. Railway Co. v. Swan, 111 U. S. 379, 4 Sup. Ct. 510. But the time of filing a petition for removal is not essential to the jurisdiction. The provision on that subject is, in the words of Mr. Justice Bradley, 'but modal and formal,' and a failure to comply with it may be the subject of waiver or estoppel."

In this case, until the receiver was appointed, there was no right of removal at all in the German National Bank, and the receiver made the motion immediately upon his being allowed to become a party defendant. It would be a very narrow and technical construction of the act of August, 1888, to construe it that if a person, subsequently to the making up the issues in a case, became entitled to removal, he could not remove because the removal was not made before the answer or plea. The reasoning of the court in the case of Powers v. Railway Co., supra, is, we think, decisive of this question. There a party, the C. & O., with one or two of its employés,

was sued for personal injury. The case was removed, upon the petition of the C. & O., to the circuit court of the United States, and upon motion of the plaintiff, the court holding that the parties might be jointly sued, the case was remanded to the state court, and, when the remanded case came for trial in the state circuit court, the parties who prevented the removal were dismissed by the plaintiff, and thereupon the railroad company filed another petition for removal, and tendered the proper bond. The state court, however, refused to recognize the validity of this removal, and tried the case. The transcript was afterwards filed in the circuit court of the United States, and that court held that it was in time, and that the action of the state court, after the filing of the petition and the tender of the bond, was null and void. The case was appealed to the supreme court, and that court affirmed the judgment of the circuit court. Among other things, it is said, after quoting the provisions of the statute of March, 1887, as corrected by the act of August, 1888:

"This provision clearly manifests the intention of congress that the petition for removal should be filed at the earliest possible opportunity. But, so long as there does not appear of record to be any removable controversy, no party can be entitled to remove it; and the provision of the act of congress, that 'any party entitled to remove any suit' 'may make and file a petition for removal,' at or before the time when he is required to make answer to the suit, cannot be literally applied. To construe that provision as restricting to the time prescribed for answering the declaration, the removal of a case which is not a removable one at that time would not only be inconsistent with the words of the statute, but it would utterly defeat all right of removal in many cases; as, for instance, whenever citizens of the same state as the plaintiff were joined as defendants through an honest mistake, not discovered by the plaintiff until after the time prescribed for answering, or whenever a personal injury was supposed, at the time of bringing an action therefor, to be a comparatively trifling one, which might be fully compensated by a sum much less than $2,000, and was afterwards discovered to be so much graver that there could be no doubt of the power and duty of the court to allow an amendment increasing the ad damnum. The reasonable construction of the act of congress, and the only one which will prevent the right of removal, to which the statute declares the party to be entitled, from being defeated by circumstances wholly beyond his control, is to hold that the incidental provision as to the time must, when necessary to carry out the purpose of the statute, yield to the principal enactment as to the right, and to consider the statute as, in intention and effect, permitting and requiring the defendant to file a petition for removal as soon as the action assumes the shape of a removable case in the court in which it was brought."

It is true that neither the plaintiffs nor the cross plaintiffs originally sued Courtney, the receiver, or sought judgment against him, but both have sued the German National Bank, alleging that the bank was created and organized under the laws of the United States; and while it is true that, at the time of the filing of the original petition and of the cross petition, this banking association, which was created and organized under the laws of the United States, could not remove this case, still the fact of its creation and organization is alleged in the petition. Thus, by the pleading of the plaintiff and of the cross plaintiff, it was alleged to be a federal corporation, and as such was subject to be taken possession of by the comptroller of the currency of the United States, and its assets collected and distributed under the laws and authority of the United States. Hence, when the receiver became a party defendant to the original and

cross petitions, the case came within the exception to the rule as announced in the case of Railroad Co. v. Cody, 166 U. S. 606, 17 Sup. Ct. 703. In that case the Texas & Pacific was sued for personal injury to the plaintiff, and he alleged that the Texas & Pacific was a private corporation, created and existing under the laws of the state of Texas, and that the defendant owned and operated a line of railway extending through certain counties. The defendant filed its petition for removal, and alleged in the petition for removal that the petitioner, at the commencement of the suit, was and still is a corporation created and organized under and by virtue of certain acts of congress of the United States, and tendered a bond. The question was made that the removal was improper because of the ruling laid down in the case of Tennessee v. Union & Planters' Bank and other cases, as the plaintiff's petition did not allege that the Texas & Pacific Railway was a federal corporation, but, on the contrary, that it was a corporation created and existing under the laws of Texas. The supreme court held that it was properly removable, and announced that the rule did not apply to corporations created and organized under federal authority.

The remaining question, of whether or not the receiver, Courtney, was entitled to remove the case, presents a new and interesting question,—one that, as far as the researches of the court and counsel have gone, has only been directly decided in one case, and that in the circuit court of appeals of the Eighth circuit, in the case of Bank v. Smith, 19 C. C. A. 42, 72 Fed. 568. That case was very briefly disposed of, but is directly in point. Prior to the act of July 12, 1882, national banks had a right to sue in the federal courts because of their federal origin, but by that act a limitation was put upon the jurisdiction of the federal courts in such cases. It is provided:

"That the jurisdiction over suits hereafter brought by or against any association established under any law providing for national banking associations, except suits between them and the United States or its officers and agents, shall be the same as and not other than the jurisdiction over suits by or against banks not organized under any law of the United States which do or might do business where such national banking associations may be doing business when such suits may be begun. And all laws or parts of laws of the United States inconsistent with this proviso be and the same are hereby repealed."

And by section 4 of the act approved March 3, 1887, it is provided:

"That all national banking associations established under the laws of the United States shall for the purpose of all actions by or against them, real, personal or mixed, and all suits in equity, be deemed citizens of the state in which they are respectively located, and in such cases the circuit and district courts shall not have jurisdiction other than such as they would have in cases between individuals, citizens of the same state. The provisions of this section shall not be held to affect the jurisdiction of the courts of the United States in cases commenced by the United States or by direction of any officer thereof, or cases for winding up the affairs of any such bank."

It will be observed that the provisions of neither of these sections affect the jurisdiction of the courts of the United States in suits commenced by the United States, or by direction of any officer thereof, or for cases winding up the affairs of any such bank. There is no provision of the national banking act which in express terms directs the bringing of suits by receivers appointed by the comptroller,

but, before the passage of the act of 1882 or the act of 1887, the right of a receiver to bring a suit, either in his own name or that of the national banking association, had been recognized. The provision in regard to the appointment of the receiver by the comptroller of the currency is quite broad, and the duties incumbent upon the receiver are thus stated in the act:

"Such receiver under the direction of the comptroller shall take possession of the books, records and assets of every description of such association, and collect all debts due and claims belonging to it, and upon the order of a court of record of competent jurisdiction may sell or compound all bad debts or doubtful debts, and on a like order may sell all real and personal property of such association on such terms as the court may direct, and may if necessary to pay the debts of such association enforce the individual liability of stockholders; such receiver shall pay over all moneys so made to the treasurer of the United States subject to the order of the comptroller, and also make report to the comptroller of all the acts and proceedings."

The provision in regard to the distribution of the assets is this:

"From time to time after full provision has been made for refunding to the United States any deficiency for redeeming the notes of such association, the comptroller shall make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proven to his satisfaction or adjudged in a court of competent jurisdiction, and as the proceeds of the assets of such association are paid over to him shall make further dividends on all claims previously proved or adjudicated; the remainder of the proceeds, if any, shall be paid to the shareholders of the association or their legal representatives in proportion to the stock by them respectively held."

There are other provisions of the national banking law which authorize the forfeiture of the charter of the bank, but in the case at bar there is no suggestion that the charter of the German National Bank has been forfeited, and it is now insisted by the plaintiffs that the German National Bank is the only necessary party in determining whether or not the claim sued for should be adjudged against that company. It seems to be decided that, had this suit proceeded in the state court without the intervention of the receiver, such a judgment would be a valid one as against the corporation. This view seems to be sustained by the cases of Bank of Bethel v. Pahquioque Bank, 14 Wall. 383; National Bank of the Commonwealth v. Mechanics' Nat. Bank, 94 U. S. 437; Denton v. Baker, 24 C. C. A. 476, 79 Fed. 189. This also seems to have been the ruling, as against the assignee in bankruptcy, under the late bankrupt act. See Eyster v. Gaff, 91 U. S. 521, and Claflin v. Houseman, 93 U. S. 130. The national banking act provides that claims against the insolvent national banks shall be approved to his (the comptroller's) satisfaction or adjudged in a court of competent jurisdiction. As an original proposition, we should be inclined to think that an adjudication in a court of competent jurisdiction would necessarily require that the receiver or the comptroller should be a party thereto. But, conceding that neither of them is an indispensable or necessary party, we think the receiver is a proper party to this litigation, and, as he has been allowed to be made a party in the state court, the inquiry arises whether or not, as he derives his authority, as does the comptroller, entirely from the laws of the United States, he is entitled to remove to this court. There is no provision in the national banking act which requires, in terms, the

receiver to defend actions against the national bank for which he is receiver. That duty would necessarily follow if the bank for which he is receiver had forfeited its charter or ceased to exist as a corporation, since such forfeiture would be an abatement of any pending action, if properly presented, and would prevent any new suit which might have for its object the adjudication of contested claims. In the case of Chemical Nat. Bank v. Hartford Deposit Co., 161 U. S. 1, 16 Sup. Ct. 439, on a writ of error from the supreme court of Illinois, the supreme court sustained a judgment against a bank, in a suit which was against both the receiver and the bank of which he was receiver, for the breach of the terms of a lease. The state court there adjudged that the receiver was not liable for the damages for the breach of the lease, but gave judgment against the banking association. This judgment was sustained by the supreme court, thus holding as we think, that although the corporation had ceased to do business, and had ceased to be a going concern, it was liable to be sued, and a judgment rendered against it for a claim which existed at the time of the insolvency, and that such a judgment in the state court was a valid judgment, and "an adjudication in a court of competent jurisdiction," under the national banking act.

In an instance like the case at bar, where the corporate franchise has not been declared forfeited, the corporation has no control of its assets, which have been taken by authority of the United States, nor has it any authority over the question of the double liability of the stockholders. The control of the assets is in the receiver, and the authority to assess the liability against the stockholders rests with the comptroller, who is appointed under the federal law. It, however, does represent the stockholders to the extent of any remaining assets after the payment of the debts and liabilities of the insolvent corporation. As the receiver is the executive officer who controls the assets of the insolvent corporation, and who is the representative, in a sense, of the comptroller, who has a right to assess the stockholders, it is eminently proper that he should be made a party, though, perhaps, under the authorities, not a necessary one, in the question of adjudicating the liability of the insolvent corporation. It is now settled that a receiver of an insolvent national bank is an officer of the United States. See Gibson v. Peters, 150 U. S. 344, 14 Sup. Ct. 134; Kennedy v. Gibson, 8 Wall. 498; Price v. Abbott, 17 Fed. 506; Hendee v. Railroad Co., 26 Fed. 677. In Price v. Abbott, Justice Gray, after referring to section 2, art. 2, of the constitution, in regard to the appointment of officers, says: "Appointments of receivers of national banks, made by the comptroller of the currency as provided by those laws, are presumed to be made with the concurrence or approval of the secretary of the treasury, and made by the head of the department, within the meaning of the constitution." Assuming, then, that Courtney is a proper party, though not a necessary one, the question arises whether the case has been properly removed. The proviso of the act of March, 1887, is that the jurisdiction of the courts of the United States is not affected in cases commenced by the direction of any officer of the United States, or in cases for winding up the affairs of any insolvent national

bank. This suit is not commenced by direction of the receiver, but is against the bank and the receiver, nor is it in terms a case for winding up the affairs of the German National Bank, but it is, we think, a case which directly affects the winding up of the affairs of the German National Bank. The many cases cited by counsel, in which the jurisdiction of the receiver to sue in the federal court is recognized, are cases in which he (the receiver) is suing and collecting the assets of the insolvent national bank. It would, however, upon general principles, seem to follow that, if the receiver could bring suits in regard to the assets of the national bank, he could also defend those assets against the claims of others, even though the claim against the insolvent bank was set up in an independent suit. But, however this may be, it seems to us that the language of the proviso in regard to winding up the affairs of such bank is sufficiently broad to include a suit like this, since it is indispensable to the winding up of the affairs of the bank that the assets of the insolvent should be defended against asserted liabilities, as well as that the assets should be collected and be properly distributed. I conclude, therefore, that while the state court is a court of competent jurisdiction to adjudicate upon disputed claims against insolvent national banks in the hands of receivers, yet when the receiver is before the court, representing, as he does, all of the assets of the insolvent bank, he can defend in that court, or have the case removed to the United States court.

I do not understand that the rule which requires, when the ground is diverse citizenship, that the diverse citizenship should exist, not only at the time of the removal, but at the time of the commencement of the suit, applies when the ground for removal is that the controversy arises under the laws of the United States, or that the right of removal is because the removing party is an officer of the United States, and intervenes as such, and certainly it should not apply if this case is one under the head of winding up the affairs of this bank. It follows, from these views, that the motion to remand must be overruled; and it is so ordered.