GUARANTEE CO. OF NORTH DAKOTA v. HANWAY.

(Circuit Court of Appeals, Eighth Circuit. October 9, 1900.)

No. 1,318.

1. FEDERAL COURTS—JURISDICTION—REMOVAL OF CAUSES.

An action by or against an agent of the shareholders of a national bank, chosen by them in pursuance of "An act authorizing the appointment of receivers of national banks and for other purposes," approved June 30, 1876, and its amendments (19 Stat. 63, c. 156; 27 Stat. 345, c. 360; 29 Stat. 600, c. 354), is a suit arising under the laws of the United States, of which a federal court has jurisdiction, under sections 1 and 2 of the Acts of 1887-88 (25 Stat. 434).

2. SAME—REMOVAL OF CAUSES.

Such an action is also a case for winding up the affairs of a national bank, and is by or against an officer thereof, and hence cognizable by a federal court, under the last clause of section 4 of the Acts of 1887-88 (25 Stat. 436).

3. SAME—REMOVAL OF CAUSES.

For the reasons above stated, an action by or against an agent of the shareholders of a national bank is removable from a state to a federal court.

4. REMOVAL OF CAUSES—TIME.

Where a case is not removable when the time for its removal prescribed in the acts of congress expires, but subsequently becomes removable by amendment or otherwise, the filing of a petition and bond for removal within a reasonable time thereafter entitles the petitioner to a transfer of the case to the federal court.

5. SAME—WAIVER.

One may waive objections to the time and manner of removal of a suit from a state to a federal court by silently proceeding to trial upon the merits, because matters of time and method are formal and modal, and not essential to the right of removal.

6. ACTION ARISING UNDER LAWS OF THE UNITED STATES—TEST.

The nature of the action, and not the character of the defense to it, constitutes the test to determine whether it arises under the laws of the United States. If the determination of the claim made in the action invokes a consideration of those laws, and the effect of the acts or omissions of parties to the suit under them, it arises under the laws of the United States, whether the defense to the suit is good or bad.

7. SUCCESSORY TRUSTEE—LIS PENDENS—ABATEMENT.

A successor trustee of a fund takes it in privity with his predecessor, and subject to suits pending against him which affect the administration of the trust. Such suits are not abated or defeated by a change of trustee.

Caldwell, Circuit Judge, dissenting.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of North Dakota.

This is an action at law for damages in the sum of $4,000 for the wrongful sale of a pledge. It was commenced in August, 1897, in one of the courts of the state of North Dakota; and the original complaint counted upon a personal liability of, and prayed for a personal judgment against, Joshua A. Hanway, who was described in the title of the action as stockholders' agent of the National Bank of North Dakota, at Fargo, N. D. On April 16, 1898, the plaintiff, the Guarantee Company of North Dakota, a corporation, filed an amended complaint in which it alleged that the defendant, Joshua A. Hanway, held and wrongfully sold the pledge in his official capacity of shareholders' agent of the National Bank of North Dakota, and prayed for judg-

ment against him as such agent, and not against him personally. Thereupon, and upon May 13, 1898, the defendant filed a petition and bond for the removal of the case to the United States circuit court for the district of North Dakota. This petition alleged that the National Bank of North Dakota was a corporation organized under the laws of the United States; that the comptroller of the currency appointed a receiver of this bank in 1893, who served as such until August, 1895, when the petitioner was chosen shareholders' agent, and qualified and acted as such; that upon his final accounting as such agent on December 20, 1897, the United States circuit court adjudged him to be indebted to the trust estate in a sum exceeding $10,000; that he then resigned his office as agent, and that court appointed one D. B. Holt as receiver, to wind up the affairs of the bank; that the action now before us was brought to obtain a judgment against Hanway in his official capacity, and to enforce the same as a claim against the proceeds of the assets of the bank; that it related to the winding up of the affairs of a national bank, and was ancillary to the administration of the trust; that he, as stockholders' agent of the bank, was an officer of the United States; that the original complaint stated no cause of action against him as such officer, but this cause of action first appeared in the amended complaint; and that the time to answer, demur, or otherwise plead to the amended complaint had not expired when he presented his petition. Upon this petition the case was removed to the United States circuit court. No motion was ever made to remand it, but an answer to the amended complaint was filed, a motion for judgment on the pleadings was made by the plaintiff and denied by the court, the case was tried without a jury, and judgment was rendered for the defendant. The writ of error challenges this judgment.

E. Ashley Mears (W. H. Standish, on the brief), for plaintiff in error.

John S. Watson (W. F. Ball and D. G. Maclay, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge (after stating the facts as above). The first objection to the judgment here is that this case was not removable to the federal court, and that the United States circuit court had no jurisdiction to hear or decide it. But the United States circuit courts have jurisdiction "of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, and arising under the constitution or laws of the United States," and every suit of that character may be removed from a state to a federal court. Acts of March 3, 1887, and August 13, 1888 (25 Stat. 434, c. 433, §§ 1, 2). This is a suit arising under the laws of the United States. It is a suit against a shareholders' agent, chosen by the stockholders of a national bank in pursuance of "An act authorizing the appointment of receivers of national banks and for other purposes," approved June 30, 1876, and its amendments, to obtain a share of the trust funds he is administering. 19 Stat. 63, c. 156; 27 Stat. 345, c. 360; 29 Stat. 600, c. 354. An action by or against a receiver of a national bank, appointed under this act, is an action arising under the laws of the United States, because the act of congress creates his office, grants his rights and powers, and imposes his duties. In the absence of this act there would be no such receiver, and no suits against him could arise. Every action by or against him necessarily involves the exercise of some of his rights, or the proper discharge

of some of his duties and invokes a consideration of the proper construction and effect of the laws of the United States from which he derives them. For these reasons, in contemplation of law every action by or against him arises under the laws of the United States. McDonald v. Nebraska (C. C. A.) 101 Fed. 171, 172; Anten v. Bank, 174 U. S. 125, 19 Sup. Ct. 628, 43 L. Ed. 920; In re Chetwood, 165 U. S. 443, 458, 459, 17 Sup. Ct. 385, 41 L. Ed. 782; Armstrong v. Trautman (C. C.) 36 Fed. 275; Grant v. Bank (C. C.) 47 Fed. 673. The same reasons bring actions by or against a shareholders' agent under the same rule. He is chosen under the same act of congress. He is selected for the same purpose. At a certain point in the administration of the trust the act of congress empowers the shareholders of a national bank to determine by ballot "whether the receiver shall be continued and shall wind up the affairs of the association, or whether an agent shall be elected for that purpose." If they vote to continue the receiver, subsequent actions by or against him arise under the laws of the United States. If they vote to choose an agent for the same purpose under the same laws, it is difficult to perceive why actions by or against him do not also arise under the laws of the United States. Those laws empower the agent, when chosen, to hold, control, and dispose of the property of the banking association which he receives for the benefit of the shareholders, to sue and to be sued, and to do all lawful acts necessary to finally settle and distribute the assets in his hands. They authorize him, with the consent and approval of the circuit or district court of the United States for the proper district, to sell, compromise, or compound the debts due to the association, and require him to report to, and obtain a final settlement of his accounts in, one of those courts. They specifically prescribe the purposes to which the proceeds of all the property which comes to his hands as the agent of the shareholders shall be devoted, and the order in which they shall be applied to those purposes. As Mr. Chief Justice Fuller aptly said in delivering the opinion of the supreme court in Re Chetwood, 165 U. S. 459, 17 Sup. Ct. 391, 41 L. Ed. 787:

"The agent proceeds in the settlement with like authority to that conferred upon the receiver, although at the conclusion of his duty he is required to render to the circuit or district court of the United States for the district where the business of the bank is carried on 'a full account of all his proceedings, receipts and expenditures as such agent, which court shall, upon due notice, settle and adjust such accounts and discharge said agent and the sureties upon his bond.'"

The purpose of this suit was to control the official conduct of this shareholders' agent, and to compel him to pay to the plaintiff out of the trust fund in his hands $4,000, which the agent claimed he was required under the laws of the United States, from which he derived his appointment, to distribute to the shareholders. Since his conduct as agent must be regulated and tried by these laws, this action and every action by or against a shareholders' agent chosen under this act of congress invoke the consideration of, and arise under, the laws of the United States.

Again, by section 4 of the Acts of 1887–88 (25 Stat. 436) it is provided that national banks shall be deemed citizens of the states in

which they are located, and that the federal courts shall not derive jurisdiction of suits by or against them from the mere fact that they are organized under the laws of the United States. But this provision is followed by an exception in these words:

"The provisions of this section shall not be held to affect the jurisdiction of the courts of the United States in cases commenced by the United States or by direction of an officer thereof, or cases for winding up the affairs of any such bank."

This is clearly a case for winding up the affairs of such a bank. It is a suit to take $4,000 from the fund realized from the collection and sale of the assets of the National Bank of North Dakota in the process of winding up its affairs under the act of congress, and to pay it to the plaintiff, instead of permitting it to be distributed to the shareholders.

Moreover, it is now well settled that a receiver of a national bank is "the agent and officer of the United States," and that the federal courts have jurisdiction of actions by and against him as such an officer, under the provisions contained in section 4 of the Acts of 1887-88, which we have just quoted. In re Chetwood, 165 U. S. 443, 458, 17 Sup. Ct. 385, 41 L. Ed. 782; Frelinghuysen v. Baldwin (D. C.) 12 Fed. 395; Price v. Abbott (C. C.) 17 Fed. 506; Armstrong v. Ettlesohn (C. C.) 36 Fed. 209; Armstrong v. Trautman (C. C.) 36 Fed. 275. Now, a receiver is not an officer of the United States because the nation has any pecuniary or other interest in his acts or omissions, but simply because an act of congress authorizes his appointment, prescribes his duties, and designates the appointing power. By the same mark, a shareholders' agent is an agent and officer of the United States. The same act creates his office, authorizes his appointment, designates the appointing power, and imposes upon him the same duties. While at a certain stage in the proceedings for winding up the affairs of a national bank the power designated to appoint the agent may exercise its option to continue the receiver or to choose the agent, when that option has been exercised, and the agent has been appointed, he discharges the same duties as the receiver, and becomes the "agent and officer of the United States," in every sense in which the receiver is such an agent and officer. McConville v. Gilmour (C. C.) 36 Fed. 277, 1 L. R. A. 498; Snohomish Co. v. Puget Sound Nat. Bank (C. C.) 81 Fed. 518, 519; Speckart v. Bank (C. C.) 85 Fed. 12, 19; Brown v. Smith (C. C.) 88 Fed. 565, 566. The result is that the federal courts have jurisdiction of an action by or against the agent of the shareholders of a national bank chosen under "An act authorizing the appointment of receivers of national banks and for other purposes," and its amendments (19 Stat. 63, c. 156; 27 Stat. 345, c. 360; 29 Stat. 600, c. 354), in the absence of diversity of citizenship, and such a suit may be removed from a state to a federal court.

It is said, however, that the petition for removal avers that the defendant had settled his final account as agent, had resigned his position, and a receiver had been appointed in his stead, in December, 1897,—four months before the amended complaint, which first stated a cause of action against him as an officer, was filed,—and

that therefore he was not liable to suit as a stockholders' agent, and no case arose under the laws of the United States. A conclusive answer to this proposition is that it is the nature of the action, not the possibility of maintaining it, that determines whether or not a case arises under the laws of the United States. If the case presents a question, or may present a question, to be determined by those laws and the acts of the parties under them, it arises under the laws of the United States, whichever way that question ought to be determined. Conceding that it might have been a good defense to the action of the plaintiff against the defendant here that a court in another proceeding had found that this defendant had more than $10,000 of the trust funds which the plaintiff was seeking to reach in his hands by this suit. and that the defendant, with this money in his possession, had resigned, yet the claim of the plaintiff was that the trust fund was liable to him for the misfeasance of the defendant before he resigned, and that he could reach that fund by a judgment in this suit against this defendant as the agent of the stockholders. Upon the questions presented by this claim he was entitled to a hearing and a decision, and that decision could not be reached without a consideration of the provisions of the act of congress under which the defendant was appointed, and the effect of his acts thereunder. The case therefore arose under the laws of the United States even if a proper decision of that question would have defeated the plaintiff.

Moreover, it does not seem to us that the resignation of this defendant after the commencement of the suit against him could relieve the trust fund, either in his hands or in those of his successor, of the liability to respond to this suit fixed upon him by the commencement of it before his resignation. The wrongful act charged in the original complaint was the same act upon which the amended complaint is based. It was committed on December 5, 1895, when the defendant was the agent of the shareholders. This action was commenced in August, 1897, while he was still the stockholders' agent, and before he had resigned. In April, 1898, four months after his resignation, this suit was transformed by amendment from an action against the defendant individually to a suit against the fund which he held in his official capacity as agent. There was no question of the statute of limitations here, and this amendment related back to the commencement of the action, so that the case stood the same as though the amended complaint had been filed when the suit was commenced. Bowden v. Burnham, 59 Fed. 752, 754, 8 C. C. A. 248, 251, 19 U. S. App. 448, 453. It was therefore, in law, an action against the fund in the hands of this trustee, commenced against him while he was acting as such trustee; and his subsequent resignation of the trust, and the substitution of another officer in his place, could not abate or destroy it. The statutes of the state of North Dakota provide: "No action shall abate by the death, marriage, or other disability of a party or by the transfer of any interest therein, if the cause of action survives or continues." Rev. Codes N. D. 1895, § 5234. The receiver subsequently appointed upon the resignation of Hanway was a mere suc-

cessory trustee in privity with the defendant, who necessarily took the fund which he was administering pendente lite, subject to the liability and charge which had been fastened upon it by the pending suit. Henderson v. Wanamaker, 79 Fed. 736, 738, 25 C. C. A. 181, 183, 49 U. S. App. 174, 177. The court below might undoubtedly, on the petition of the receiver, have substituted him for the defendant. But no succession of trustees or resignation of officers after the lis pendens had fastened the charge of this suit upon the fund could defeat this action, or relieve the fund of liability. McNulta v. Lochridge, 141 U. S. 327, 332, 12 Sup. Ct. 11, 35 L. Ed. 796; State v. Port Royal & A. Ry. Co. (C. C.) 84 Fed. 67, 68. This action arose under the laws of the United States, notwithstanding the statement in the petition for the removal that the defendant resigned as shareholders' agent after he was sued, and before the complaint against him was so amended as to charge him with liability as an officer.

Another objection to the jurisdiction of the court is that the case was not removed until after the time had passed within which the defendant was required by the laws of the state of North Dakota to answer or plead to the original complaint in the action. But the original complaint stated no cause of action against the defendant as the shareholders' agent. It was not until the amended complaint was filed that such a cause of action was stated, and it was then that a case first arose under the laws of the United States. The petition and bond for removal were presented within the time prescribed for answer or plea to the amended complaint. Where a case is not removable when the time for its removal prescribed in the act of congress expires, but subsequently becomes so by amendment or other action, the filing of a petition and bond for its removal within a reasonable time after it becomes removable entitles the petitioner to its removal. Powers v. Railway Co., 169 U. S. 92, 101, 18 Sup. Ct. 264, 42 L. Ed. 673; Bailey v. Mosher (C. C.) 95 Fed. 223; Speckart v. Bank (C. C.) 85 Fed. 12. None of the pleadings in this case were filed in the court until long after its removal from the state court, but the statutes and practice of the state of North Dakota did not require them to be filed, inasmuch as they were served upon the opposite party. Moreover, the time and the manner of the presentation of the pleadings and the petition relate to the form and method of the proceeding, and not to the essentials of the right of removal. No motion to remand this case was made, and, if there were any defects in the time or manner in which the proceedings were taken, they have been waived. Edrington v. Jefferson, 111 U. S. 770, 4 Sup. Ct. 683, 28 L. Ed. 594; Railroad Co. v. Burns, 124 U. S. 165, 8 Sup. Ct. 421, 31 L. Ed. 333; Railroad Co. v. Daughtry, 138 U. S. 298, 11 Sup. Ct. 306, 34 L. Ed. 963; Martin v. Railroad Co., 151 U. S. 673, 686, 687, 14 Sup. Ct. 533, 38 L. Ed. 311.

Coming to the merits of the action, it is assigned as error that the court below denied the motion of the plaintiff for judgment on the pleadings. In its amended complaint the plaintiff alleged that about December 5, 1895, the defendant held a pledge of 40 shares of the capital stock of the Merchants' National Bank of Devil's Lake,

N. D., of the value of $1,000, which belonged to the plaintiff, to secure the payment of its promissory notes held by the defendant; that, without demand of payment of the notes, he sold this stock at private sale to himself, without notice to the plaintiff, and afterwards conveyed it to a purchaser for value, who caused it to be transferred to himself on the stock journal of the Merchants' Bank. To this complaint the defendant answered that he denied each and every allegation contained therein which was not admitted, qualified, or explained or specially denied in the subsequent portions of the answer. For a second defense, he admitted that he held 30 shares, and no more, of the stock of the Merchants' National Bank as security for the plaintiff's promissory notes, and denied that said stock was of any value whatever. For a third defense, he alleged that he sold this stock, with the advice and consent of the plaintiff, for $50 per share. For a fourth defense, he averred that the stock was worthless, but that he sold it for $50 per share, and applied the proceeds thereof upon the indebtedness of the plaintiff to the National Bank of North Dakota. And, for a fifth defense, he pleaded that the plaintiff was indebted to the National Bank of North Dakota on December 5, 1895, in the sum of $5,000; that it had deposited with the bank the 30 shares of stock to secure the payment of this debt; that, with the advice and consent of the plaintiff, he sold the stock to one John A. Percival for $1,500, and applied this sum to the payment of the indebtedness of the plaintiff to the National Bank of North Dakota. It will be seen that the various separate defenses of the answer constitute in reality but one defense, and that is that the stock pledged was sold by the consent of the plaintiff at an agreed price to John A. Percival, and the proceeds thereof were applied to the payment of its indebtedness. This defense is so clearly pleaded, so plainly stated and reiterated, that he who runs may read. Argument and illustration cannot make the proposition that there was no ground for judgment against the defendant upon these pleadings more clear than the plain statement of their contents which we have made. Several pages of the brief of counsel for the plaintiff in error are devoted to the discussion of such technical objections as that a denial that the stock "was of the value of four thousand dollars ($4,000), or of any value whatever," is an admission that it was worth $3,999.99, and that the general denial of "each and every allegation in said complaint contained, not hereafter admitted, qualified, or explained or specially denied," is an admission of all the substantial allegations of the complaint, because in the subsequent defenses pleaded in the answer all those averments were either admitted or qualified or explained or specially denied. The arguments in support of propositions of this character are too refined and elusive for our appreciation. Even if there were no denial of the allegations of the complaint, the plain averments of the answer that the pledge was sold with the advice and consent of the plaintiff, and that its proceeds were applied to the payment of his debt, constitute a complete defense to the action. The motion for judgment on the pleadings was properly denied.

Another specification of error is based on the proposition that the

facts found do not sustain the judgment. The court tried the case without a jury, and made special findings of facts and conclusions of law. The facts found were that on December 5, 1895, the defendant, as shareholders' agent of the National Bank of North Dakota, held the obligations of the plaintiff which were then due and unpaid to the amount of about $5,000, and held as collateral for the payment of this indebtedness 30 shares of the capital stock of the Merchants' National Bank of Devil's Lake; that this stock was worth $300, and no more; that on that day, with the advice and consent of the plaintiff, the defendant sold this stock to John A. Percival for the agreed consideration of $1,500, and thereupon, with plaintiff's consent, credited and indorsed this $1,500 upon its indebtedness to the bank. These facts establish a complete defense to the action, and fully sustain the judgment which the court rendered. That judgment is accordingly affirmed.

CALDWELL, Circuit Judge (dissenting). The defendant, Hanway, was not sued individually. The action was brought against him in his official capacity as stockholders' agent of the National Bank of North Dakota. The amended complaint did not change the cause of action, or pray for any different relief from that sought by the original complaint. On the 20th day of December, 1897, Hanway resigned his office as stockholders' agent, and on the same day the United States circuit court appointed D. B. Holt receiver to wind up the affairs of the bank. More than three months after all this had been done, the defendant Hanway again appeared upon the scene, and filed a petition to remove the cause into the circuit court of the United States upon the ground that, as stockholders' agent, he was an officer of the United States. It is needless to say that he occupied no such relation at the time he filed this petition. He had resigned his office, if office it may be called, months before. His resignation had been accepted, the state of his accounts ascertained and declared, and his official or trust relation or agency in the business completely terminated, and the court had appointed Holt receiver to close up the affairs of the bank, to whom all of its assets had been turned over by Hanway. The appointment of Holt as receiver rests upon the general equity powers of the court, and not upon any special authority conferred by act of congress providing for winding up the affairs of insolvent national banks. Moreover, the application for removal was made too late. The time within which the action could be removed had long since passed. This is not a mere formal matter which the court and parties may disregard at pleasure. The requirements of the act of congress in this regard are jurisdictional and peremptory, and obligatory upon the parties as well as the court. The person making the application for the removal had long since passed out of the case, and had no further interest therein, either personal or official, and had no shadow of a right to appear in the case for any purpose whatever. He was as much a stranger to the case as if he had never been a party. As no other person sought to remove the case, it is unnecessary to inquire whether the receiver appointed by the circuit court could have

done so if he had applied within apt time. This is the first instance in which an entire stranger to a suit, not being a party thereto or having any interest therein, has been permitted to remove a cause from the state to a federal court.