### WEEKS v. INTERNATIONAL TRUST CO.

(Circuit Court of Appeals, First Circuit. October 6, 1903.)

#### No. 473.

1. JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION—ACTION AGAINST AGENT OF INSOLVENT NATIONAL BANK.

An action against a stockholder's agent for winding up the affairs of a national bank is one of which a federal court has jurisdiction, irrespective of citizenship, under section 4, Judiciary Act Aug. 13, 1888, c. 866, 25 Stat. 436 [U. S. Comp. St. 1901, p. 514].

2. NATIONAL BANKS—POWERS—LEASE OF PROPERTY.

A national bank has power to lease property for its occupancy in conducting its business for a term extending beyond the expiration of its charter, even though the lease is assignable only by consent of the lessor.

---

¶ 1. Jurisdiction of federal courts in cases involving federal question, see note to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore-Purchasing Co. v. Boston & M. C. C. & S. Min. Co., 35 C. C. A. 7.

**3. SAME—CONSTRUCTION OF LEASE—OPTION TO RELET AFTER RE-ENTRY AT TENANT'S RISK.**

A lease provided that on a breach of any of its covenants by the lessee the lessors might re-enter and resume possession, "and thereupon the lessors may, at their discretion, relet the premises at the risk of the lessee, who shall remain for the residue of said term responsible for the rent herein reserved, and shall be credited with such amounts only as shall be by the lessors actually realized." *Held* that, to entitle the lessors to recover rent under such provision after a re-entry and resumption of possession by them, they must show an election to relet the premises, and that where the evidence did not show any offer to relet, except at an increased rental, the question of such election was one for the jury.

**4. LANDLORD AND TENANT—ACTION ON LEASE—PLEADING.**

That the declaration in an action by a lessor against the lessee, after default by the latter in the payment of rent and re-entry by the lessor, states the cause of action as one for the recovery of rent, instead of for damages for breach of covenant, is immaterial where the lease provides that in such case the lessee shall remain responsible for the rent during the term.

**5. SAME—TRANSFER OF PROPERTY BY LESSOR.**

A provision of a lease giving the lessor, in case of re-entry for condition broken, a discretion to relet the premises at the lessee's risk, must be construed as giving such election to the landlord in interest at the time, in case of a conveyance of the premises by the original lessor.

In Error to the Circuit Court of the United States for the District of Massachusetts.

For opinion below, see 116 Fed. 898.

Edward E. Blodgett and G. Philip Wardner (Eugene P. Carver, on the brief), for plaintiff in error.

Robert M. Morse (William M. Richardson, on the brief), for defendant in error.

Before COLT, Circuit Judge, and BROWN and LOWELL, District Judges.

LOWELL, District Judge. This is an action brought against the plaintiff in error, receiver of the Broadway National Bank, upon a covenant in a lease of the first floor and basement of a building on Milk street, in Boston, given by the predecessors in title of the defendant in error to the bank. In this opinion the plaintiff in error will be called the defendant, and the defendant in error the plaintiff. The bank had occupied since 1884 a part of the premises described in the lease. On March 30, 1893, the owners of the building had let the first floor to the bank. The lease ran for six years from April 30, 1893, and was signed, on the part of the lessee, "Broadway National Bank, by James B. Kellogg, Cashier." On August 11, 1898, Parkman and others, then owners of the premises, executed to the bank the lease here in question for a term of 10 years from April 1, 1899, at a rent of $6,000 a year. This lease was signed, "Broadway National Bank, by Roswell C. Downer, President." There was no vote authorizing Downer to negotiate or to execute the lease, but the directors knew that he was negotiating for a lease in behalf of the bank, and on July 27, 1898, they voted that he be authorized to execute a lease from the bank to one Pray, upon such terms and with such covenants as to Downer might seem fit. By this vote they intended to authorize Downer to let to Pray one-half of the basement which the bank was

then occupying under a verbal agreement for a new lease made with Parkman and the other owners of the property. A lease for two years was thereafter executed by Downer in accordance with the vote. On March 28, 1899, the lessors sold the whole building to the defendant in error. On December 16, 1899, the bank became insolvent, and the comptroller of the currency appointed Wing as its receiver. On February 15, 1900, the comptroller released the estate of the bank to the defendant, as the stockholders' agent. Between December 16, 1899, and January 5, 1900, the plaintiff entered upon the premises and repossessed itself of the same as of its former estate. The plaintiff agreed with the receiver and the defendant that the occupation of the premises by the two latter after January 5, 1900, should be taken as a tenancy at will, and should not operate as a waiver by the plaintiff of its termination of the lease or the bank's tenancy thereunder, nor operate as an affirmance or acknowledgment by the bank or the receiver or the stockholders' agent of any liability on their part under the lease. The defendant occupied the premises until May 19, 1900. Except as above stated, the plaintiff had possession of the premises since its re-entry. The bank's charter was issued September 29, 1884, and was limited to expire October 3, 1904.

The lease, in addition to the terms above stated, contained the following clause:

"Provided, always, and these presents are upon this condition, that if the said lessee or its successors or assigns do or shall neglect or fail to perform and oberve any or either of the covenants contained in this instrument, which on its or their part are to be performed, or if the said lessee shall be declared bankrupt or insolvent according to law, or if any assignment shall be made of its property for the benefit of creditors, then and in either of the said cases the lessors, or those having their estate in the said premises, lawfully may, immediately or at any time thereafter, and whilst such neglect or default continues, and without further notice or demand, enter into and upon the said premises or any part thereof, in the name of the whole, and repossess the same as of their former estate, and expel the said lessee and those claiming under it, and remove its effects (forcibly, if necessary), without being taken or deemed guilty of any manner of trespass, and without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant; and thereupon the lessors may, at their discretion, relet the premises, at the risk of the lessee, who shall remain for the residue of said term responsible for the rent herein reserved, and shall be credited with such amounts only as shall be by the lessors actually realized."

On June 21, 1901, the plaintiff brought suit. After setting out a part of the facts heretofore stated, the declaration proceeded as follows:

"That by the terms of said lease said bank, notwithstanding such entry and taking possession by the plaintiff, remained and remains responsible for the rent reserved by said lease; that the rent due on the last days of May, 1900, June, 1900, * * * and May, 1901, was unpaid; that demand for said rent was duly made of said bank when said amounts were severally due, and that the total amount of rent due and unpaid May 31, 1901, was $6,500, for which said bank is responsible; that on January 22, 1900, John W. Weeks was duly elected agent; * * * and that on February 15, 1900, the Comptroller of the Currency and Daniel G. Wing, receiver as aforesaid, duly transferred and delivered to said Weeks, as agent of the Broadway National Bank, all the assets and property of said bank; and that by virtue of the appointment of said Weeks as agent and of the other acts aforesaid

he became and is liable to be sued in his own name for the rent hereinbefore set forth."

The defendant pleaded a general denial and a payment, and also that upon the termination of the lease it became the plaintiff's duty to use all reasonable effort to relet the premises, so as to minimize the damages; that, if the plaintiff had used such effort, suitable and responsible parties were willing at various times to hire the premises in question at a rent as great as, or greater than, the rent reserved in the lease to the bank; that the plaintiff willfully and arbitrarily refused to accept these parties as tenants; that the defendant offered to the plaintiff several specified suitable and responsible tenants, whom the plaintiff arbitrarily and unreasonably refused to accept. At the trial the Circuit Court directed a verdict for the plaintiff for an amount equal to the rent reserved in the lease for the time in question, less certain payments actually made to the plaintiff by the occupant of the basement, formerly the bank's subtenant. The case is here upon the defendant's exceptions. In discussing some of these exceptions further evidence bearing upon them will be set forth in addition to the general statement of the case above made.

1. The defendant excepted to the jurisdiction of the Circuit Court. The jurisdiction is based upon Act Aug. 13, 1888, c. 866, § 4, 25 Stat. 436 [U. S. Comp. St. 1901, p. 514]:

"That all national banking associations established under the laws of the United States shall, for the purposes of all actions, by or against them, real, personal, or mixed, and all suits in equity, be deemed citizens of the states in which they are respectively located; and in such cases the circuit and district courts shall not have jurisdiction other than such as they would have in cases between individual citizens of the same state. The provisions of this section shall not be held to affect the jurisdiction of the courts of the United States in cases commenced by the United States or by direction of any officer thereof, or cases for winding up the affairs of any such bank."

That the receiver of a national bank may be sued in the Circuit Court, irrespective of citizenship, was decided in Auten v. U. S. Bank, 174 U. S. 125, 19 Sup. Ct. 628, 43 L. Ed. 920. That a stockholders' agent in this respect stands like a receiver was decided by the Circuit Court of Appeals for the Ninth Circuit in Guarantee Co. v. Hanway, 104 Fed. 369, 44 C. C. A. 312. With that decision we find no reason to disagree. See, also, In re Chetwood, 165 U. S. 443, 459, 17 Sup. Ct. 385, 41 L. Ed. 782. The exception is overruled.

2. The defendant contended that the lease in question, whose term extended beyond the expiration of the bank's charter, was ultra vires and void, and he excepted to the ruling that the bank could take such a lease. In Brown v. Schleier, 118 Fed. 981, 55 C. C. A. 475, the Circuit Court of Appeals for the Eighth Circuit held that a national bank can take a lease for 99 years. That court said that the lease there in question "was an interest which was salable during the life of the corporation or on its dissolution." 118 Fed. 984, 55 C. C. A. 478. In the case at bar the bank's interest could be alienated only with the consent of the lessor. But we are not prepared to hold that the difference (if there be one) between the lease in Brown v. Schleier and the lease in this case is material to the validity of the latter. Strictly speaking, the lease here in question is alienable, though alien-

able only upon a condition. The condition is usual, at any rate in Massachusetts. And the assignment of a lease, even where permitted unconditionally, does not free the lessee from his obligations thereunder; he remains liable on his covenants, unless the lessor expressly or by implication releases the liability. To require unrestricted assignability in those leases taken by a national bank which extend beyond its charter would hamper the bank in obtaining a lease, without relieving the bank from embarrassment at the charter's expiration. Considering that the charter of a national bank may be extended as a matter of course (Act July 12, 1882, c. 290, § 1, 22 Stat. 162 [U. S. Comp. St. 1901, p. 3457]), we hold that Congress did not intend to forbid such a corporation from hiring banking rooms for a term extending beyond the period of its existing charter. When, for example, but three years of its chartered existence are left, it will be unduly hampered if it is not permitted to take a lease for more than three years. In McCormick v. Market Bank, 165 U. S. 538, 17 Sup. Ct. 433, 41 L. Ed. 817, at the time the lease was executed the bank had no authority to execute a lease of any sort, and the case does not assist us in determining what sorts of leases a national bank may validly enter into. What would be the effect of a lease which, in respect of length of term or otherwise, was entered into for some purpose other than that of meeting the reasonable needs of the bank, we need not discuss at this time. This exception of the defendant is therefore overruled.

3. The defendant contended that Downer, the president of the bank, was never authorized to execute the lease, and that the bank and the defendant were never bound by its terms, and he excepted to the ruling of the judge that the lease was validly executed. The evidence above stated was clearly sufficient to submit to the jury upon the question of ratification, and, upon the whole, we deem it so convincing as to justify the direction given by the court.

4. The defendant contended that, even if the plaintiff had a good cause of action on the facts set forth and proved, it could not recover under an allegation of liability for rent, because the defendant was not liable for rent, but only for breach of covenant. We think the declaration sufficiently sets out a claim for a breach of the bank's covenant, and is not limited to a claim for rent eo nomine. In its use of the word "rent" the declaration follows the lease, and in this respect the meaning of both is plain. Perhaps it would have been more accurate, in both lease and declaration, to substitute for the word "rent" the phrase "a sum of money equal in amount to the rent"; but such a substitution in the declaration, after the original inaccuracy of the lease, would have been needlessly verbose. This exception is therefore overruled.

5. The defendant contended, and laid particular stress upon the contention, that the plaintiff could not recover under the clause in the lease hereinbefore set forth without some effort on its part to relet the premises. Upon this point the learned judge instructed the jury as follows:

"I think the construction which the defendant asks me to put on it (the covenant in the lease) is a narrow one, and rather a strained one, which I

would not be justified in giving it. Take the clause as it stands, and referring to the words, 'Thereupon the lessors may at their discretion relet the premises,' the defendant says that that imposes upon the plaintiff a certain duty to use reasonable efforts to rent the property. I do not so read it, at least as far as this court is concerned. I cannot justly hold that the International Trust Company intended to assume any risk. I think the fair construction of it is that they did not intend to incur any risk, but that they intended to use their own discretion in the matter absolutely. Of course, under such circumstances, where a man agrees to act only at his own discretion, the law ordinarily says he must act with some degree of reasonableness and with some degree of justice, and have some regard to the rights of the position of the other parties concerned. If that is the construction to be given to this clause, still it remains on the defendant to show that the plaintiff had abused that discretion; that it had proceeded with a certain degree of willfulness. Now, I find no evidence of that. I find, on sifting out the testimony, only three tenants actually brought to the International Trust Company in such a form as would present to it a fair question for solution. The first was the Beacon Trust Company, which it was clearly justified, and correct, in disregarding; the second was the Title Insurance Company, as to which, under the circumstances, it was justified in using its discretion. Whether or not its conclusion was correct, it was a case where it had a right to solve according to its own discretion. The same with reference to the tailoring establishment."

To these instructions the defendant duly excepted.

The plaintiff contended in argument, first, that it was entitled to recover, even though it had willfully and even maliciously refused to let the premises; and, second, that, if reasonable effort to relet was required of it, the evidence showed that reasonable effort had been made. Therefore this court has to determine, first, what is the proper construction of the covenant in question? and, if the defendant's construction be found the correct one, then, second, what does the evidence in this case show concerning the plaintiff's efforts to relet?

We cannot adopt the plaintiff's construction of the covenant. At common law, if a lessee broke a covenant of the lease, either the covenant to pay rent or some other, and if the lessor had the right to re-enter for breach of covenant, the lessor might take either of two courses: Either he might abstain from re-entry, in which case the lessee remained liable on his covenant to pay rent until the end of the term, or, on the other hand, he might re-enter and resume possession, in which case the lessee's liability to pay rent was at an end. If the lessor did not re-enter, he retained his right against the lessee, but risked losing rent for his property by reason of the lessee's insolvency. If he re-entered, he gained the right to seek a solvent tenant, but ran the risk of losing rent by reason of his inability to find one. A covenant like that here in question, not uncommon in Massachusetts, has for its object to give the lessor some of the advantages which result from both the courses before described. The lessor is permitted to seek a solvent tenant without letting go his hold upon the old one. The covenant does not compel the lessor to relet or to attempt to relet if he does not wish to do so. He need not avail himself of the covenant. He may still abstain from re-entry, and so hold the lessee liable for rent eo nomine. He may still re-enter, and thereafter may use the premises as he sees fit, or may leave them wholly unused. The lessee cannot complain of either action. By the first he is left

in possession of the premises; by the second he is relieved from his liability, under the covenant, to pay rent. On the other hand, the lessor may avail himself of the covenant. He may re-enter, and may exercise his discretion to relet the premises at the risk of the lessee. The exercise of this discretion is manifested by a reletting or by an attempt to relet. If there is an actual reletting, the covenant becomes operative, and the original lessee is liable for the deficiency of rent, at any rate if the reletting is honestly and reasonably made. If an honest and reasonable attempt to relet is made without success, then also the lessee is liable; the lessor need not go through the form of a reletting. But if the lessor does not relet, and makes no attempt to relet, he has not exercised the discretion nor has he made the election given him by the covenant, and, as we hold, it is only upon the exercise of the lessor's discretion to relet that the covenant imposes a liability upon the lessee. The re-entry has terminated the lessor's right to recover rent eo nomine, and the right given by the covenant to recover the difference between the old rent and the new does not arise until the election to relet has been made by the lessor. The lease does not, indeed, impose upon the lessor any duty to relet or to attempt to relet. The lease merely gives the lessor certain rights upon his election to do certain acts.

The injustice which would result from the plaintiff's construction of the lease makes it improbable that the parties intended such a construction. In argument, the plaintiff's counsel admitted that the lessee's liability under the covenant would cease if the premises were destroyed by fire or were actually used by the lessor. But to concede this is to abandon the plaintiff's whole contention. There is no material distinction between the actual use of premises by the lessor, and his possession of premises with an intent to prevent actual use by anybody else, and there is none between a general refusal to relet and an unreasonable refusal to relet to a suitable tenant. We go further, and hold that, in order to make the lessee liable under this covenant, the lessor must within a reasonable time make his election to relet, and must manifest that election by a reasonable attempt to do so. What sort of an attempt he must make we need not discuss here. In general, the effort must be that which a reasonable landowner would make under the circumstances. Not every proposed tenant need be accepted, but an unreasonable refusal to accept a suitable tenant will be deemed an abandonment of the election to relet at the risk of the lessee.

It was urged by the plaintiff's counsel that, if the construction thus put upon the covenant be the true one, much litigation will necessarily result, because in almost every case the lessee will urge by way of defense or of mitigation of damages that the lessor did not make any reasonable attempt to relet, and, if the premises were relet, that they were let at an unreasonably low price. We are not insensible to the force of this argument, but it assumes that the court and jury will be unable to pass fairly upon the questions thus raised. If the argument be urged by way of stating a hard case, we think that the case suggested by the plaintiff's counsel is harder, viz., that in which a tenant under a long lease, who is early ejected for breaking one of its smallest

covenants, is compelled to pay full rent during the whole term, while the lessor declines to receive a new tenant. A construction which gives an arbitrary right of forfeiture of the tenant's beneficial interest, while holding him to the payment of full rent, is to be avoided.

In several cases the courts of Massachusetts have dealt with the covenant here in question, and in none of their decisions do we find anything opposed to the conclusion we have reached. See Way v. Reed, 6 Allen, 364; Bowditch v. Raymond, 146 Mass. 109, 15 N. E. 285. In the latter case the court said: "At the first publication of notice there was a contingency, not merely as to the amount of liability, but as to whether it would ever attach or arise out of the covenant. The lessors in their discretion might not relet the premises, but resume possession of them." This language implies that resumption of possession without reletting prevents the obligation of the covenant from attaching to the lessee.

Having thus determined that the plaintiff, in order to recover, must show an election to relet the premises, we next consider if an election to relet was so clearly shown as to justify the instructions quoted above.

We cannot take this view of the evidence. To go no farther, we find that the plaintiff's president testified that he told several persons who inquired the price of the premises that he asked $6,000 for the banking rooms, and that he never quoted a lower price. The banking rooms in question were on the first floor of the building. The basement was in the actual occupation of the bank's old subtenant, who was paying therefor to the plaintiff more than $2,000 a year. The testimony of the plaintiff's president amounts to this: That, instead of seeking by a reasonable reletting to reduce the sum which the defendant was bound to pay, the plaintiff was holding out to possible tenants a demand for a rent more than $2,000 larger than that stipulated for in the old lease. The evidence was sufficient to warrant a jury in finding that the plaintiff did not elect his remedy of reletting the premises. It was argued that the evidence showed that the plaintiff had elected not to relet, and so that the court should have ordered a verdict for the defendant; upon the whole, however, we think the issue should have been decided by the jury under proper instructions.

6. The defendant further objected that the discretion stipulated for in the covenant was that of the original lessors, and not that of the plaintiff or actual owner of the premises. Thus to construe the covenant would deprive it of all its value. The discretion intended by the lease was that of the landlord in interest, not that of some one who had been the landlord at an earlier time. In this respect the ruling of the court below was correct.

The judgment of the Circuit Court is reversed, the verdict is set aside, the case is remanded to that court for further proceedings in accordance with the opinion passed down this day, and the costs of appeal are awarded to the plaintiff in error.