## INTERNATIONAL TRUST CO. v. WEEKS.

(Circuit Court of Appeals, First Circuit. May 10, 1905.)

### No. 572.

1. LANDLORD AND TENANT—LEASE—COVENANTS—BREACH—ACTIONS—INSTRUCTIONS—REQUEST.

Where, in an action for breach of a covenant in a lease of property occupied by a bank, the court charged that the lessor, on the insolvency of the bank, might have terminated the entire contract, or, under a covenant in the lease, might have relet the premises at the risk of the lessee, in which case the lessee or its agent was responsible for whatever amounts the lessor should not receive from tenants to whom the premises were let from time to time, but that the lessor was bound to manifest such election within a reasonable time, and exercise reasonable care to relet, it was not error for the court to refuse a request to charge that on the insolvency of the bank the lessor was entitled to enter the premises as of its former estate, and, at its discretion, to relet at the risk of the lessee bank, in which case the bank would remain liable for the residue of the term for the rent stipulated, less such amounts as should be collected by plaintiff for the rent or use and occupation of the premises, or any part thereof.

2. SAME—NOTICE.

It was not error for the court to refuse to charge that, in order to hold the lessee bank liable for the amount of the rent for the residue of the term, it was not obligatory on plaintiff to notify the bank of its election to do so.

In Error to the Circuit Court of the United States for the District of Massachusetts.

The International Trust Company brought action against John W. Weeks, shareholders' agent of the Broadway National Bank, on a covenant in a lease of a part of a building previously occupied by the bank before insolvency.

August 11, 1898, Henry Parkman and others, predecessors in title of the plaintiff, executed a written lease of the premises to the bank for a term of 10 years from April 1, 1899, at an annual rental of $6,000; the lease containing the following clause:

"Provided, always, and these presents are upon this condition, that if the said lessee or its successors or assigns do or shall neglect or fail to perform and observe any or either of the covenants contained in this instrument, which on its or their part are to be performed, or if the said lessee shall be declared bankrupt or insolvent according to law, or if any assignment shall be made of its property for the benefit of creditors, then and in either of the said cases the lessors, or those having their estate in the said premises, lawfully may, immediately or at any time thereafter, and whilst such neglect or default continues, and without further notice or demand, enter into and upon the said premises or any part thereof, in the name of the whole, and repossess the same as of their former estate, and expel the said lessee and those claiming under it, and remove its effects (forcibly, if necessary), without being taken or deemed guilty of any manner of trespass, and without prejudice to any remedies which might otherwise be used for arrears of rent or preceding breach of covenant; and thereupon the lessors may, at their discretion, relet the premises at the risk of the lessee, who shall remain for the residue of said term responsible for the rent herein reserved and shall be credited with such amounts only as shall be by the lessors actually realized."

On March 29, 1899, Henry Parkman and others sold the building to the plaintiff trust company, and on December 16, 1899, the lessee bank became insolvent, and the Comptroller of the Currency was appointed a receiver. On February 15, 1900, the Comptroller released the estate of the bank to the defendant, as the stockholders' agent, and between December 16, 1899, and February 5, 1900, plaintiff entered upon the premises, and repossessed itself of the same as of its former estate. The demised premises were occupied by the receiver, and afterwards by the stockholders' agent, from the time of the failure of the bank up to and including May 18, 1900, and full compensation therefor to the amount of the rent referred to in the lease was paid to the plaintiff. This occupancy and payment under an agreement between the parties was not to affect or prejudice their respective legal rights.

Pursuant to the direction of the Court of Appeals, the court, among other things, charged the jury that the owner of the property, having entered into possession, might then decide to terminate the contract, not merely the lease, but the mutual obligations of the parties, so far as the future was concerned, for all purposes whatsoever (in other words, it might have terminated the lease in the usual sense in which it is understood a lease is terminated), or it might, as said in the lease, relet the premises at the risk of the lessee, holding the lessor (that is, the stockholders' agent) responsible for whatever amounts they should not receive from the tenants to whom the premises were let from time to time. The plaintiff also had a right to elect which of those things it would do, but, in order to make defendant liable under such provision of the lease, plaintiff must, within a reasonable time after entering into possession, have made its election to relet, and manifested that election by a reasonable attempt to do so. But defendant was not bound to tender plaintiff a certain trust company as a tenant, unless plaintiff had elected to let the property at the risk of the bank. Assuming that plaintiff had taken possession of the premises under such circumstances that, in accordance with the terms of the lease, it had a right to sublet at the risk of the bank or its agent, then the jury must find, in order to find for plaintiff, that it made honest and reasonable efforts to relet; that its efforts in that direction were those which a reasonable landowner, under the circumstances, would exercise. "You see that these two questions are: First, has the defendant proved by reasonable preponderance of the evidence that it elected to relet the premises, and seasonably manifested that election? And, secondly, has it used reasonable care in subletting or reletting the property? Upon either of these topics, if the plaintiff has not satisfied you by the fair preponderance of the evidence in the case, as I have explained to you, your verdict must be for the defendant; otherwise your verdict will be for the plaintiff."

Plaintiff requested the court to charge: (1) That, upon the insolvency of the lessee bank, plaintiff was entitled to enter upon the premises and to repossess the same as of its former estate, and, at its discretion, to relet the premises at the risk of the lessee bank, in which case the bank would remain liable under its covenant to that effect for the residue of the term for the amount stipulated as rent in the lease, less such amounts as shall be collected by the plaintiff for the rent or use and occupation of the premises, or any part thereof. (2) That, in order to hold the lessee bank liable for the amount of the rent for the residue of the term under such covenant, it was not obligatory upon plaintiff to notify the bank of its election so to do. (3) That, in order to hold the lessee bank liable for the amount of the rent for the residue of the term under such covenant, it was not obligatory on plaintiff to relet the premises, or to attempt to relet them.

The requests being refused, and the verdict being for defendant, plaintiff severally assigned as errors the court's refusals so to rule.

Robert M. Morse · (William M. Richardson, on the brief), for plaintiff in error.

Eugene P. Carver and Edward E. Blodgett (G. Philip Wardner, on the brief), for defendant in error.

Before COLT and LOWELL, Circuit Judges, and BROWN, District Judge.

PER CURIAM. We find no substantial question presented by the record in this case which was not disposed of by our opinion passed down October 6, 1903, in Weeks v. International Trust Company, 125 Fed. 370, 60 C. C. A. 236. The third assignment of error raises again the question there decided. No error is shown by the first and second assignments, as the law bearing on the subject was sufficiently and correctly stated by the learned judge in his charge.

The judgment of the Circuit Court is affirmed, and the defendant in error recovers costs in this court.