### BARRON v. McKINNON.

#### (Circuit Court, D. Massachusetts. May 13, 1910.)

#### No. 656.

1. **BANKS AND BANKING (§ 287\*)—NATIONAL BANKS—SHAREHOLDER'S AGENT —SUIT.**

    Where a shareholder's agent has been appointed to take charge of the assets of a national bank under Act June 30, 1876, c. 156, § 3, 19 Stat. 63 (U. S. Comp. St. p. 3510), providing that such agent may sue and be sued in his own name or in the name of the association, suit was properly instituted against him by an alleged creditor of the bank to recover on a guaranty collateral to a sale to complainant of certain stock owned by the bank.

    [Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 287.\*]

2. **BANKS AND BANKING (§ 260\*)—NATIONAL BANKS—GUARANTY—ULTRA VIRES.**

    Where a national bank, in order to induce complainant to purchase certain steamship stocks owned by it, agreed to take complainant's note for $50,000 for the stock and hold the stock as collateral security, and to guarantee plaintiff against any loss in the transaction from the execution and delivery of the note, such guaranty was not an ordinary commercial guaranty, but one outside the ordinary business of banking, and ultra vires.

    [Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 260.\*]

Suit by Clarence W. Barron against John W. McKinnon. On demurrer to declaration. Sustained.

Whipple, Sears & Ogden and Alexander Lincoln, for plaintiff.
Walter I. Badger and Wm. Harold Hitchcock, for defendant.

LOWELL, Circuit Judge. The plaintiff's amended declaration alleges that the defendant is the shareholders' agent of the National Bank of North America in New York; that Morse, the vice president and director of the bank, owning the majority of its capital stock

and controlling its management, acting on behalf of the bank, sold the plaintiff 2,000 shares of stock of the New York & Porto Rico Steamship Company. In payment therefor the bank took the plaintiff's note for $50,000, and on the bank's behalf Morse and the plaintiff agreed that the bank should hold the stock as collateral security for the payment of the note and should guarantee the plaintiff against any loss in the transaction from the execution and delivery of the note. Thereafter the bank transferred the note, the transferee brought suit against the plaintiff, and recovered judgment for more than $56,000, which judgment the plaintiff has paid. The plaintiff further alleges that the stock has not been sold, that he is still its owner, and—

"that the value of said stock with all increment received by him therefrom was at all times and is now much less than the amount which the plaintiff has been obliged to pay and expend by reason of said suit, and much less than the amount of the plaintiff's liability upon said promissory note, and that he has sustained great loss in said transaction arising from the execution and delivery of said note."

The defendant demurred to the declaration upon several grounds, of which the court need notice but two:

I. That the suit was brought against the shareholders' agent, and not against the bank itself.

Had action been brought against the receiver of the bank, appointed under the banking act, the defendant's contention would seem to be sound. Lantry v. Wallace, 182 U. S. 536, 21 Sup. Ct. 878, 45 L. Ed. 1218, was an action brought by the receiver of an insolvent national bank to recover an assessment duly levied upon the shareholders. The defendant set up by way of cross-petition or counterclaim that the bank had induced him to become a purchaser of its stock by means of fraud. The Supreme Court said:

"We perceive no ground whatever upon which the defendant can have a judgment upon his cross-petition or counterclaim against the receiver. That officer had nothing to do with the fraudulent transactions of the bank prior to its suspension. His duty was to take charge of its assets, and have them administered according to the rights of parties existing at the time of such suspension. Whether, if the defendant claimed a judgment against the bank or its officers for the alleged fraud or deceit of the latter officers, he could participate in the distribution of the proceeds of the stock assessment until all the contract obligations of the bank had been met, was not decided by the Court of Appeals."

Weeks v. International Trust Co., 125 Fed. 370, 60 C. C. A. 236; International Trust Co. v. Weeks, 203 U. S. 364, 27 Sup. 69, 51 L. Ed. 224, decides nothing to the contrary, as the liability there sued on arose after the receiver's appointment.

But the shareholders' agent appointed under section 3 of the act of June 30, 1876 (19 Stat. 63, c. 156 [U. S. Comp. St. p. 3510]), stands differently from a receiver. In order that the shareholders may elect an agent to administer the bank's affairs, it is necessary that the receiver should certify that the allowed claims of every creditor of the bank, not including the shareholders who are creditors, have been paid. In order that the agent shall enter upon his duties, some of the shareholders must have executed a bond to pay all claims against the bank subsequently allowed. Hence it follows that no question of

priority arises between the plaintiff's claim and the ordinary contract obligations of the bank, as in the Lantry case. There a judgment against the receiver would embarrass him in his statutory distribution of assets. Here no embarrassment would arise from a judgment against the shareholders' agent, unless we are to suppose that the bank's creditors are limited to their remedy on the bond, an inconvenient and unreasonable interpretation of the statute and one apparently at variance with the authorities. Guarantee Co. v. Hanway, 104 Fed. 369, 44 C. C. A. 312. The reason which forbade a suit against the receiver in the Lantry Case does not exist in case of a suit against the shareholders' agent. It must be presumed that the contract obligations of the bank have already been discharged, and therefore there appears no reason why the plaintiff's claim, if he can establish it, should not be satisfied as soon as possible. The section cited above provides expressly that the shareholders' agent "may, in his own name or in the name of such association, sue and be sued." No such provision is made for suing a receiver. I can perceive no reason for denying their natural meaning to the words above quoted. In this respect, as against this ground of demurrer, I hold the declaration to be good.

II. That the contract set up in the plaintiff's declaration is ultra vires of the bank.

It is not easy to state precisely the meaning of the contract sued on. What would be a loss on the plaintiff's note does not clearly appear, as the establishment of loss involves, to some extent at least, a comparison between the plaintiff's payments on the note and the value of the stock which he bought. For instance, did the bank guarantee that the value of the stock should at all times be at least equal to the plaintiff's payments on the note? Or did it guarantee merely that at some time or other the stock should reach that value? If so, what was the time fixed? The contract's precise meaning need not here be determined, inasmuch as in any construction it appears to me to be beyond the corporate power of the bank. Doubtless a bank may guarantee a note under some circumstances in the course of its banking business; but the guaranty here made, whatever it may mean, is not an ordinary commercial guaranty, but an extraordinary and almost unintelligible contract, somewhat connected with stock which the bank was seeking to sell. In this respect, the declaration does not state a valid cause of action, and the demurrer must therefore be sustained.